[S. F. Nos. 3426, 3427. In Bank.—February 21, 1906.]

## A. C. HAMPTON et al., Respondents, v. ANDREW CHRISTENSEN et al., Appellants.

MECHANICS' LIENS—GUARANTY BY OWNER TO MATERIALMEN—DEDUCTION FROM COMPLETION PAYMENT—GUARANTY NOT A PROHIBITED PAYMENT.—Where the contractor was unable to obtain credit from

materialmen to complete the building, and at his request the owner
guarantees his obligation to pay them, under agreement that the
amount should be deducted from the completion payment due the
contractor, and the owner paid the amount after the completion
payment became due, and made the agreed deduction, his mere
guaranty cannot be deemed a payment before maturity prohibited
by section 1184 of the Code of Civil Procedure as against other
creditors of the contractor, who had neither filed liens nor given
notice to withhold the completion payment.

ID.—DOCTRINE OF EQUITY—PENALTIES AND FORFEITURES—CONSTRUCTION
OF PENAL STATUTE.—The doctrine of equity that a promised per-
formance of an act will be deemed an actual performance is applied
only in aid of justice, and never in aid of the harsh rule of law
exacting penalties and forfeitures, which equity abhors; and so
far as the statute has the effect of compelling the owner of the
building to pay the debt twice, it is highly penal, and should be
strictly construed in his favor.

ID.—OFFSETS AND COUNTER-CLAIMS—CONSTRUCTION OF CODE.—The pro-
visions of sections 1183 and 1184 of the Code of Civil Procedure,
that the ''contract shall operate as a lien in favor of all persons
except the contractor, to the extent of the whole contract price,''
which ''shall not be diminished by any prior or subsequent indebted-
ness, offset, or counter-claim in favor of the reputed owner and
against the contractor,'' refer only to offsets and counter-claims
not arising under the terms of the contract, and as to which, from
an inspection of the contract, materialmen and laborers could have
no notice.

ID.—DEDUCTIONS ARISING UNDER CONTRACT — MATERIALS SUPPLIED BY
OWNER—STIPULATED DAMAGES FOR DELAY.—The owner should be
allowed to deduct from the completion payment materials necessarily
supplied by the owner, by reason of the failure of the contractor
to place them in the building, and also stipulated damages arising
under the terms of the contract for delay of the contractor in the
completion of the work.

ID.—EXCESS NOT APPLICABLE TO FINAL PAYMENT—RECOVERY AGAINST
CONTRACTOR.—Any excess due to the owner under the contract, above
the amount of the completion payment, cannot be deducted from the
final payment of twenty-five per cent to the injury of lien claim-
ants; but the owner's right of recovery for such excess is against
the contractor alone.

ID.—NOTICE TO WITHHOLD COMPLETION PAYMENT—GARNISHMENT.—Un-
der a notice by a lien claimant to the owner, which, though inarti-
ficially drawn, was sufficient, under the requirement of section 1184
of the Code of Civil Procedure, to operate as a garnishment of the
completion payment, it became the duty of the owner to withhold
sufficient funds therefrom to pay the claim, together with one hun-
dred dollars attorneys' fees and estimated costs; and his subsequent
payments after service of the notice, though legal, and within the

contemplation of the contract, cannot be allowed to affect so much of the fund as was thus set apart by force of the notice.

ID.—ERRONEOUS JUDGMENT FOR CLAIMANT NOT A LIEN-HOLDER.—A judgment for a claimant who had filed no lien, against the contractor, and also providing that such claimant is entitled to have the claim satisfied out of any residue that may appear in the hands of the owner after all lien claimants have been satisfied, and from the product of the sale of the property after all lien claimants have been fully satisfied, is erroneous in so far as it directs payment out of the funds of the owner.

ID.—REVERSAL OF JUDGMENT AGAINST SURETY OF CONTRACTOR — VOID BOND.—Where the purported undertaking given by a surety company for the contractor is void a judgment against the surety will be reversed, with direction to the trial court to enter judgment in its favor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Wal J. Tuska, Rigby & Rigby, P. F. Dunne, Walter H. Linforth, and Jackson Hatch, for Appellants.

S. Rosenheim, Barna McKinne, and Jordan & Brann, for Respondents.

THE COURT.—The opinion heretofore rendered in Department is modified by striking therefrom all of paragraph 6 down to and including the words ''fees were excessive.'' So modified, the opinion and judgment in Department are approved and adopted as the opinion and judgment of the court in Bank.

The following is the opinion rendered in Department Two November 25, 1905, omitting the paragraph stricken out:—

HENSHAW, J.—This is a consolidated action to enforce on the part of certain materialmen and laborers their liens against the property of appellant Charles Franzoi, upon a building contract entered into between him and the contractor, Christensen. The owner appeals from the judgment against him and from the order denying his motion for a new trial. The United States Fidelity and Guaranty Company likewise appeals from the judgment given against it upon

the contractor's bond. The court found that the contract in all respects was valid and in compliance with the law concerning mechanics' liens, and that it was duly recorded as required by law. The contract price was payable in five installments. The fourth installment, payable on the completion of the building, was two thousand dollars, and twenty-five per cent payable thirty-five days after completion, was $2,750. Franzoi, the owner, did not join issue with the lien claimants as to the amounts which they respectively alleged to be due them, nor as to the validity of their respective liens. He joined issue only upon the allegations as to the sum due from him to the contractor, which, in the cases of some of the lien claimants, was alleged to be in excess of six thousand dollars. Upon trial, the court aggregated the completion and final payments, amounting to $4,750, and added to this the amount admitted to be due for extra work, ninety-six dollars, making a total of $4,846. This sum, reduced by certain payments credited to Franzoi, amounted to $4,030.70, which last sum he found to be due from the owner to the contractor and subject to the liens of the claimants. He refused to reduce this sum by certain other payments and disbursements found to have been made by Franzoi, and his refusal so to do as to these separate items is the basis of the principal complaint upon this appeal. For convenience we will refer to the two-thousand-dollar payment due upon completion as the "completion payment," and the twenty-five per cent payment retained for thirty-five days as the "final payment."

1. The court refused to allow credit to the owner for the sum of $905.21 paid for glass, hardware, etc. This amount was admittedly paid under the following circumstances: Before the completion of the building, Christensen represented to the owner that he could obtain no credit from materialmen, and, consequently, could not complete the building. He requested the owner to guarantee his accounts with these materialmen for the material necessary for completion, and to deduct these amounts from the completion payment when it became due. This Franzoi did, his obligation to pay the materialmen having been assumed before the completion payment was due, but the payments to these men having been made after the completion payment was due; the court upon this finding that "All of said payments, though actually made

by the said Franzoi after the completion payment was due, were, and each and all of them was, assumed by the said Franzoi, and the said Franzoi actually obligated himself to pay the same . . . at a time when no payment whatever was due from him, the said Franzoi to the said Christensen." From this the court concluded that the obligation to pay, thus assumed, was the equivalent of the prohibited payment of section 1184 of the Code of Civil Procedure, where it is declared that "No payment made prior to the time when the same is due . . . shall be valid for the purpose of defeating, diminishing or discharging any lien in favor of any person except the contractor; but as to such liens, such payments shall be deemed as if not made." No liens had been filed against the property at the time these payments were made. No notice to withhold had been served upon the owner, with the exception of one, amounting to $509.08. Conceding that under this notice it became the duty of the owner to withhold the sum of $509.08, with attorneys' fees and costs, it was not his duty to withhold any other part of the two thousand dollars which became due to the contractor upon completion, and it is not disputed that he would have been justified in paying this difference of about fifteen hundred dollars over to the contractor. The contention of respondent, however, is—and this contention was adopted by the trial court—that because Franzoi, before the completion payment became due, had "obligated himself" to pay these materialmen, this obligation in some way, by operation of law, became a prepayment out of the fund in advance of the ·date of its falling due. It is true that equity in many instances, under the maxim that it will regard as done that which ought to have been done, will treat a promised performance of an act as an actual performance as of the time when it should have been performed. But it does this always in aid of natural justice, and never to further the harsh rule of law exacting penalties and forfeitures, which equity abhors. In *West Coast Lumber Co.* v. *Knapp,* 122 Cal. 81, [54 Pac. 533], this court has said: "So far as the statute has the effect of compelling the owner to pay more than he has agreed to pay, or to pay his debt twice, it is highly penal and should be strictly construed in his favor. Those who seek to inflict upon him a penalty for his failure to comply with the terms of the law must show

clearly that the dereliction has occurred. The law must be construed against the exaction of the penalty if in reason it can be.'' In substance, what was this transaction upon the part of Franzoi? In return for the contractor's promise to reimburse him out of the completion payment when it became due, he guaranteed or assumed the contractor's responsibility for the payment of certain material necessary for the completion of his house. When the completion payment became due (no rights by way of liens or notice to withhold having intervened) he would have been at perfect liberty to pay this money to the contractor. Indeed, no one will dispute but that, still holding the money, he could have gone with the contractor and paid it over himself to the materialmen, thus to make sure that the obligations were canceled. Or, again, no one would question his right to have paid over the money to the contractor, and immediately to have received back from him the amount of these obligations. But because he did not adopt one of these roundabout ways of accomplishing the same result, but, instead, himself paid the amount of the funds due the contractor and deducted the amount so paid, it is contended that having done this, in contemplation of his obligations previously assumed, he must pay the money twice. This, instead of being a construction of a penal statute in favor of the owner, is a tightly stretched and extremely attenuated construction against him. If, before he actually made these payments out of this fund after it became due, demands to withhold, and claims of liens aggregating two thousand dollars had been served and filed, he then, in the eye of the law, would have stood compelled to sequester this money and hold it to meet these demands, and thus might have been obliged, under his guaranty or obligation, to pay out of his own pocket the amounts which he had assumed on behalf of the contractor. That was the only risk which he ran; but as in this case a demand amounting to only five hundred dollars had been served upon him, there was still fifteen hundred dollars to be devoted to the extinguishment of these obligations. Finally, upon this point it may be said that, as this penal clause of the statute is to be construed in favor of the owner, the question may be taken as determined in the owner's favor under the finding of the court that the payments were actually made after the completion payment was due.

2. The court found that there were certain materials, trifling in their individual character, but aggregating in value $194.79, which the contractor failed to furnish and which Franzoi himself was compelled to supply, by reason of the failure of Christensen to place these materials in the building. But it refused to allow appellant deduction from the full contract price of this amount. The right of the owner under this contract to such a deduction is sufficiently shown by the pleadings and findings. The court's refusal is justified by respondent upon the language of section 1183 of the Code of Civil Procedure to the following effect: ''In case of a contract for the work between the reputed owner and his contractor, the lien shall extend to the entire contract price, and such contract shall operate as a lien in favor of all persons except the contractor to the extent of the whole contract price,'' together with the language of section 1184 of the Code of Civil Procedure to the following effect: ''As to all liens, except that of the contractor, the whole contract price  . . shall not be diminished by any prior or subsequent indebtedness, offset or counterclaim in favor of the reputed owner and against the contractor.'' The contract also contained a provision that for delay in the completion of the work the owner should be entitled to damage from the contractor in an amount not to exceed ten dollars per day. The court found that the owner had actually sustained damages in the sum of five hundred and fifty dollars, but refused also to deduct this amount from the contract price. Although these two items are dissimilar in character, they are in one respect essentially the same. They are both deductions claimed by the owner to be due him under the very terms of the contract, and the disallowance of both was based upon the same provisions of the law. They may. therefore, be discussed together. By appellant it is contended upon the authority of *Kellogg* v. *Howes,* 81 Cal. 175, [22 Pac. 509] ; *McDonald* v. *Hayes,* 132 Cal. 490, [64 Pac. 850] ; *Stimson Mill Company* v. *Braun,* 136 Cal. 124, [68 Pac. 481, 89 Am. St. Rep. 116], and other like cases, that it is the settled law in this state that where there is a valid contract between the owner and contractor such contract is the absolute measure of the owner's liability. He contends that this doctrine has application to its fullest extent, and quotes the language of this court in *Stimson Mill Co.* v. *Braun* to the effect that

the contract being of record, materialmen and laborers may inspect and examine it, and if not content with its provisions may refuse to furnish material or labor, "but if they do furnish any their right to a lien must be limited by the terms of the contract." Further, he contends that if the provision of the Lien Law to the effect that the whole contract price shall not be diminished by any prior or subsequent indebtedness, offset, or counterclaim in favor of the reputed owner and against the contractor, is to be construed as respondents would have it construed, and as the court actually did construe it, the provision is absolutely void for the same reasons as those given by the court in the Stimson Mill Company case, where it was determined that the requirement that the whole contract price should be payable in money was void, as being an unwarranted interference with property rights and the right of contract. This last proposition may be summarily disposed of. If such a construction were to be given to the clause in question, indubitably the clause itself would be declared void. But such is not the true construction. The clause has reference, in the first place, to offsets not arising under the terms of the contract, and as to which, from an inspection of the contract, materialmen and laborers could have no notice. Manifestly, it would be unjust if, as against the demands of such, the owner were allowed to plead in reduction of the contract price some claim against the contractor as to which, in the very nature of things, they could have had no notice. These classes of offsets or counterclaims, whether arising before the execution of the contract or subsequent thereto, are all excluded. (*Dore* v. *Sellers*, 27 Cal. 593; *Schmid* v. *Busch*, 97 Cal. 188, [31 Pac. 893].) But, upon the other hand, certain matters of offset, if provided for by the terms of the contract itself, may both with justice and legality be allowed.

If the owner, for example, is obliged to furnish material and labor to complete a contract abandoned by the contractor, or if material of cheaper value is substituted in the building, or if upon default of the contractor to complete, the owner enters into the possession of the uncompleted building, no one could question the justice of the owner's claim for an allowance for any of these matters—if an allowance for them was contemplated by the provisions of the contract—for the contract price is established and agreed to in express contempla-

tion of the fact that the particular material shall be used, and that the building shall be turned over to the owner completed. If the particular materials are not used, if the building is turned over uncompleted, so that the owner has to accept it unfinished, or complete it at his own cost, there has been a failure by so much to put the amount of the contract price into the structure, and it would be manifestly unjust that the owner should be expected to pay for that which, without any fault of his own, he has not received. The second item of damages for failure to complete in time, differs somewhat from the first, where the loss was occasioned by the necessity of the owner to make good the deficiencies of the contractor in the furnishing of omitted material. It is a perfectly legal contract which makes time of completion of its essence, and provides that the contractor, for a failure to perform in time, shall make good to the owner such loss as the latter may sustain thereby. More than this, it is a deduction or offset which, but for the Lien Law, the owner would have the unquestioned right to claim from the amount found due the contractor under the contract. Reference to the following cases will disclose that it is well settled that the owner is entitled to an allowance for damages for noncompletion; *Mehrle* v. *Dunne,* 75 Ill. 239; *Murphy* v. *Buckman,* 66 N. Y. 297; *Millsap* v. *Ball,* 30 Neb. 728, [46 N. W. 1125]. But the right of materialmen, artisans, and laborers of every class is to have a lien upon the property upon which they have bestowed their labor or furnished their material for the full value of the same, and this right is one solemnly guaranteed to them by the constitution of the state. (Art. XX, sec. 15.) The legislature is enjoined to pass laws for the speedy and efficient enforcement of these liens. Every provision of the laws which the legislature may enact must be subordinate to and in consonance with this constitutional provision. It will be noted that, in framing these laws, primarily designed for the protection of materialmen and laborers, the legislature has seen fit to reserve for the use of these lien claimants but one of the payments. After providing that no payment shall be made until the commencement of the work, it sets aside a fund amounting to twenty-five per cent of the contract price, to be held for thirty-five days after the completion of the building, and this fund, in case of a valid contract, is practically

the only money available to meet the demands of lien claimants. Whatever may be said of other payments, this amount of money cannot lawfully be depleted or reduced to the injury of any such claimant. If it could be, it would be setting at naught the constitutional provision granting a lien for the full value of the labor done or material furnished. Upon the other hand, ample opportunity is accorded to the owner by our laws to protect himself against all derelictions, omissions, and neglects upon the part of the contractor. And this he may do by providing for reserved payment to be made on completion, sufficiently large to protect him against any violation of the contract. In case of such violation there would then be justly chargeable against the completion payment, and chargeable as a first demand upon the fund, such sums as the owner might prove due him in recoupment for damages. Out of this payment would therefore first come (if contemplated by the terms of the contract) the necessary cost to the owner of completion in case of abandonment, the cost of making good trifling imperfections and omissions, and the proved damages in case of failure to complete on time. But if there be no such completion payment provided for in the contract, or if such completion payment be more than exhausted by the demands of the owner, then we hold that the excess of such demand cannot be carried over and made a charge against the twenty-five per cent final payment, to the injury of any lien claimant thereon; for, as has been said, since this final payment is the only fund which the legislature has sequestered to meet the demand of the lien claimants, to permit this would be to deprive them of their constitutional right to a lien. Making application of these principles to the case at bar, there was a completion payment fund of two thousand dollars, subject, first, to the just demands of the owner. He was entitled, therefore, to a credit against this fund of $194.79 and $550, or a total of $744.79. The next claim upon the fund was that of the Humboldt Lumber Company for the amount of its demand, "including counsel fees, not exceeding $100, besides reasonable costs." (Code Civ. Proc., sec. 1184.) This money, under the lumber company's notice to withhold, must be regarded as sequestered, as though under garnishment, for the amount of the company's demand. The rest of the two thousand dollars was subject to the payments made by the

owner, certain of which we have heretofore considered under paragraph 1, and others of which—those to Mangrum & Otter, and Smith & Young—the court actually allowed. The result, however, is that the legal demands upon the two-thousand-dollar payment by the owner himself, and next by the lumber company, taken with the payments which the owner made out of the fund, far exceed its amount. In figures, the excess is as follows:

| | |
|---|---:|
| Due owner | $ 744 79 |
| Due lumber company | 509 08 |
| Plus attorney's fees | 100 00 |
| Paid Whittier, Fuller, and others | 905 21 |
| Paid Mangrum & Otter, and others | 807 25 |
| Making a total of | $3,066 33 |

But, as has been said, there was, for the payment of these demands, no more than the sum of two thousand dollars. This excess of $1,066.33 is not chargeable against the twenty-five per cent final payment until the demands of all the lien claimants have been first satisfied out of that fund, and in this case the demands are in excess of the fund. If hardship to the owner seems to result from this, it may be answered that it is always in his power to guard against loss by making the completion payment large enough to protect him, or by exacting an undertaking from the contractor for this purpose; while, upon the other hand, if encroachments were allowed upon this fund, the practical result would be, in most instances, to deprive materialmen and laborers of the lien guaranteed them by the constitution. For this excess payment then, of $1,066.33, the owner's right of recovery is against the contractor alone.

3. We think the notice to withhold, served on behalf of the Humboldt Lumber Mill Company, though inartificially drawn, was sufficient under the requirements of section 1184 of the Code of Civil Procedure. (*Schallert-Ganahl Lumber Co.* v. *Neal,* 91 Cal. 362, [27 Pac. 743]; *French* v. *Powell,* 135 Cal. 640, [68 Pac. 92]; *Corbett* v. *Chambers,* 109 Cal. 178, [41 Pac. 873].) As has been said under subdivision 2, foregoing, it became the duty of the owner, upon service of this notice, to withhold sufficient funds to pay the claim of the lumber

company, together with attorneys' fees in the sum of one hundred dollars and estimated costs, and his subsequent payments after service of that notice, even though legal and within the contemplation of the contract, cannot be allowed to affect so much of the fund as was thus set apart by force of this notice, operating in the nature of a garnishment.

4. The firm of Sanborn & Vail had sold picture-molding to Christensen, used in the building, to the amount of $145.73. They filed no lien, and the court found and decreed, and its decree was carried into the judgment, that Sanborn & Vail were entitled to a judgment against the defendant, Christensen, for this amount, with interest, but that they were not entitled to a lien upon the property of Franzoi. So far, there is no objection to the finding. But the finding proceeds: "The said Sanborn & Vail Company are entitled to have said judgment satisfied out of any residue that may appear in the hands of the said defendant, Franzoi, after the claims of all the lien claimants herein adjudicated have been fully satisfied." If "residue" here means surplus moneys due from the owner to the contractor after payment of all liens, this also is unobjectionable. If it means a residue belonging to Franzoi, as appears from the further finding that Sanborn & Vail are entitled to have their judgment satisfied "from the product of the sale of the property after the claims of all the lien claimants have been fully satisfied," then, manifestly, it is error in awarding a judgment payable out of the funds of the owner in favor of one who has no lien upon the owner's property.

5. The appeal of the United States Fidelity and Guaranty Company is sustained, with directions to the trial court to enter judgment in its favor upon the ground that the purported undertaking given by it is void. (*Shaughnessy* v. *American Surety Co.*, 138 Cal. 543, [69 Pac. 250, 71 Pac. 701].)

A new trial in this case is unnecessary, and it is therefore ordered that the consolidated judgment of the court here appealed from be, as to the appellant the United States Fidelity and Guaranty Company, reversed, with instructions to enter a judgment upon the findings in its favor, and as to the appellant Franzoi, that, upon the findings, the judgment be modified to conform to the views of the court above expressed. Appellants will recover their costs upon appeal.

Lorigan, J., and McFarland, J., concurred.