[Civ. No. 933.   Third Appellate District.—April 1, 1912.]

THOS. MANNIX, Respondent, v. A. W. WILSON, Appellant, and J. W. MITCHELL CO., Defendant.

MECHANIC'S LIEN—FORECLOSURE—PLASTERING—DEFENSE OF UNREASONABLE DELAY—SUPPORT OF FINDING.—In an action to enforce a mechanic's lien against the owner of a building for the plastering done by the plaintiff, where the answer pleads unreasonable delay in the prosecution of the work, by which plaintiff was damaged in the loss of rents, it is held that a finding against such unreasonable delay on plaintiff's part is sustained by evidence that any delay was caused by others over whom the plaintiff had no control, and that the work was begun as soon as the building was in readiness for lathing and plastering, and was accomplished with diligence thereafter.

ID.—INADMISSIBLE EVIDENCE—CONTRACT AND SPECIFICATIONS—DELAY OF CONTRACTOR IN COMPLETION OF BUILDING.—The contract and specifications were not admissible in such action to foreclose the plasterer's lien, for the purpose of showing that the contractor was liable to the owner, under the terms of the contract, for all loss and damage resulting from his delay and failure to complete the building within the time designated in the contract, although such contract would be valid as between the contractor and the owner.

ID.—DEDUCTION OF DAMAGES TO OWNER FROM LAST PAYMENT NOT ALLOWABLE AGAINST LIEN CLAIMANTS — CONSTITUTIONAL RIGHT PROTECTED.—The right of the owner to deduct stipulated damages as against the contractor cannot be allowed as a deduction from the last payment, to the injury of lien claimants, whose right to liens are guaranteed by the constitution and protected by the legislature, especially as regards payment of such liens out of the last payment of twenty-five per cent of the contract price; and to permit that fund to be sequestered in the interest of the owner as against the contractor would be to deprive lien claimants of their constitutional right to enforce their liens.

ID.—SEQUESTRATION OF FUND BY NOTICE — SETTLEMENT WITH CONTRACTOR AT PERIL.—Where plaintiff, when there was $7,000 unpaid on the contract served a notice upon the owner to withhold therefrom the full amount of his claim for plastering, pursuant to section 1184 of the Code of Civil Procedure, the owner was thereby required to sequester therefrom sufficient money fully to meet the plaintiff's demand, and any money that might be necessary to meet any claim of lien which might be filed therefor; and where the owner settled with the contractor without reserving sufficient money to meet the plaintiff's demand, he did so at his peril.

ID.—SETTLEMENT WITH CONTRACTOR INCLUSIVE OF ALL CLAIMS EXCEPT PLAINTIFF'S—ABATEMENT NOT ALLOWABLE.—Where the settlement by the owner with the contractor included a settlement of all claims against the owner, with the exception of the plaintiff's claim, it must be presumed that the owner was allowed, as against the contractor in such settlement, all that he was entitled to, including all claim he might have for a reduction of the contract price in consequence of delay; and after such full settlement of all other claims the owner cannot urge any abatement of the plaintiff's claim.

ID.—ACCEPTANCE OF BUILDING FROM CONTRACTOR—WAIVER OF DAMAGES FOR NONPERFORMANCE.—The acceptance of the building by the owner from the contractor, in the absence of any showing of fraud or mistake, implies a waiver of any claim for damages against the contractor by the owner, on account of the nonperformance of the contract in any particular.

ID.—OWNER BY SETTLEMENT UNCONDITIONAL GUARANTOR OF CONTRACTOR'S OBLIGATION TO PLAINTIFF.—The owner by the settlement with the contractor became an unconditional guarantor of the contractor's obligation to pay the plaintiff for his work, his liability being coextensive with that of the contractor to the plaintiff. In the absence of any defenses existing between the contractor and the plaintiff and of any fault on the part of the plaintiff, the owner is liable to him for the debt.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Dorn & Dorn & Savage, for Appellant.

Roger Johnson, for Respondent.

BURNETT, J.—The original complaint, as stated by respondent, set forth a cause of action for the foreclosure of a mechanic's lien upon the property therein described, for plastering the building thereon, under a contract between respondent and the original contractor, one J. W. Mitchell, and also against the owner, appellant Wilson, personally, on a "stop notice" served upon him pursuant to section 1184 of the Code of Civil Procedure. By a subsequent amendment another cause of action for the same debt is alleged against appellant, on a written guaranty which appellant gave re-

spondent for the payment by said Mitchell of the contract price of said plastering. No question is raised, nor indeed could be, as to the sufficiency of the complaint, and the only issue presented by the answer which can be considered here is found in the averment that "plaintiff hindered and delayed the said work, and did not prosecute the same with reasonable or any diligence, but unreasonably and without any valid excuse therefor did so negligently and slothfully perform the same and so neglected the performance of and hindered and delayed the same, that the same was not completed by him until sixty days subsequent to the time when the same should have been completed by him and when the same would have been completed by him had he not delayed the work as aforesaid and had he prosecuted the same with reasonable diligence," and that thereby appellant was damaged by loss of rents to the extent of $2,840. The finding of the court directly negatives these allegations in the answer and, outside of a single ruling upon offered evidence, to be hereafter noticed, it is apparent, from the record, that the only matter for adjudication here is as to the sufficiency of the evidence to support said finding.

As to this there can be no serious controversy. Indeed, it is strange that the question should be raised at all. It may be said that the testimony for appellant in this respect is so equivocal and uncertain as to hardly create even a conflict. The contract involved herein was executed September 2, 1908. It is apparent that the lathing and plastering could not be done until the building was made ready for it. It does not appear definitely when the building was ready for respondent's work. Appellant testified that he thought that a month before respondent started to work he notified the latter that the building was ready for him, but furthermore he testified: "He didn't start his work before away back in September. . . . I could safely say he delayed in starting work after I had notified him that it was ready for him for thirty days. It was at least two or three weeks. It was fully a month. . . . I notified him to commence work the beginning of July, I think it was . . . ; he commenced to make his mortar two or three weeks afterward. . . . He commenced plastering about August 13th. No, I don't think he commenced plastering until about September 1st. . . . I think he started in to

plaster between the 1st and 15th of September—no, between the 15th of September and the 1st of October.'' His other witness, the architect, also testified: ''I don't remember the date when Mannix commenced the work. I should judge some time during the month of September.'' Furthermore, he said: ''A plastering contractor mixes his mortar first, which takes some time. Then that mortar must lay for ten or twelve days so it will become aged.'' As to this asserted delay of thirty days in beginning the work it is therefore apparent that the question was at least left in doubt by the testimony of appellant's witnesses.

Turning, however, for support of the challenged finding, to the evidence, which under the established rule requires of us full credit, we may adopt the epitome furnished by respondent, as follows: Mannix says that when Wilson notified him to commence work he went to the building and found it was not ready for plastering, but he commenced to mix his mortar on the street and was stopped by a policeman, which occasioned a delay of about two days. There was not room to mix it in the basement, because it was full of rubbish and carpenter stuff and they had men there getting it ready to plaster. When the architect called on him to commence plastering the building was not ready. Neither the front nor back stairway was up; the electric wires had not been inspected and his work went over them; the carpenters' work on the first floor was improperly done and Wilson made him do it over afterward. ''I proceeded just as soon as the work was ready and continued it as quick as it could be done.'' One Ziegler did the lathing, and ''I started him as soon as he could get to work and followed it up with the plastering.'' Furthermore, plaintiff testified that he talked with appellant at different times and that the latter said, ''Of course he had to pay the bill; he knew he had to pay the bill; he knew he had to pay it, and he did not complain about the character of the work or about any delays, and he said that he was ready to pay as soon as the affair could be settled up.'' The testimony of plaintiff as to the progress of the work is also corroborated by two of the lathers, who made clear the fact that any unwarranted delay in the plastering was not at all the fault of respondent. It seems idle to pursue the subject any further or to argue—what certainly will not be disputed—

that respondent was not responsible for delays caused by those over whom he had no control and with whom he sustained no contractual relations.

The only ruling which is assailed is exhibited in the transcript as follows: "The defendant thereupon offered in evidence the original plans and specifications and contract between A. W. Wilson and J. W. Mitchell. . . . Counsel for defendant Wilson stated that said contract was offered in evidence to show that Mitchell was required by it to complete the building within one hundred working days after June 22, 1908, and that in case of his failure so to do that he should be liable to the owner for all loss and damage arising by reason of such delay, to which introduction of said evidence the plaintiff objected, upon the ground that the same was immaterial, irrelevant and incompetent, and was a contract between Mitchell and Wilson and not binding upon Mannix except so far as it was made so by his agreement." The objection was sustained.

. The question may be considered from several viewpoints, and from each we shall discover that the said ruling was either justifiable or innocuous. One of these is set forth perspicuously by Mr. Justice Henshaw in the case of *Hampton* v. *Christensen,* 148 Cal. 729, [84 Pac. 200]. Therein it is said: "It is a perfectly legal contract which makes time of completion of its essence, and provides that the contractor, for a failure to perform in time, shall make good to the owner such loss as the latter may sustain thereby. More than this, it is a deduction or offset which, but for the lien law, the owner would have the unquestioned right to claim from the amount found due the contractor under the contract. . . . But the right of materialmen, artisans and laborers of every class is to have a lien upon the property upon which they have bestowed their labor or furnished their material for the full value of the same, and this right is one solemnly guaranteed them by the constitution of the state. (Art. XX, sec. 15.) The legislature is enjoined to pass laws for the speedy and efficient enforcement of these liens. . . . It will be noted that, in framing these laws, primarily designed for the protection of materialmen and laborers, the legislature has seen fit to reserve for the use of these lien claimants but one of the payments. . . . Whatever may be said of other payments, this amount of

money [the twenty-five per cent to be set aside for the lien claimants] cannot lawfully be depleted or reduced to the injury of any such claimant. If it could be, it would be setting at naught the constitutional provision granting a lien for the full value of the labor done or material furnished." The opinion proceeds to point out how the owner may protect himself against the derelictions of the contractor, and it is declared that "we hold that the excess of such demand cannot be carried over and made a charge against the twenty-five per cent final payment, to the injury of any lien claimant thereon; for, as has been said, since this final payment is the only fund which the legislature has sequestered to meet the demand of the lien claimants, to permit this would be to deprive them of their constitutional right to a lien." The application of this principle to the situation here is simple. The pleadings admit a contract between Wilson and Mitchell for $45,500, of which twenty-five per cent was required to be withheld to satisfy lien claimants, viz.: $11,375. The building was completed and accepted and notice of acceptance filed about February 9, 1909. This $11,375 could not lawfully be paid for any other purpose than to satisfy lien claimants, for at least thirty-five days thereafter, which would bring it to March 16, 1909. Plaintiff's lien was filed March 5, 1909, and the evidence shows that a settlement was made with all the other claimants. It is perfectly manifest, therefore, that the necessary portion of this $11,375 must be applied to the satisfaction of respondent's claim, regardless of whatever demand might exist in favor of appellant against the contractor by reason of the latter's failure to complete the building within the time provided.

Again, it is admitted that respondent, on February 2, 1909, served a notice upon the owner pursuant to section 1184 of the Code of Civil Procedure, and also that, subsequently, in the completion and acceptance of the building, there was due on the completed payment from Wilson to Mitchell the sum of about $7,000. Said section provides that "Upon such notice being given, it shall be the duty of the person who contracted with the contractor to, and he shall, withhold from his contractor, or from any other person acting under such reputed owner, and to whom by said notice the said labor or materials, or both, have been furnished, or agreed to be fur-

nished, sufficient money due, or that may become due to such contractor, or other person, to answer such claim and any lien that may be filed therefor for record under this chapter.'' Therefore, the owner was required to sequester this amount and hold it to meet respondent's demand; but, notwithstanding this notice, the evidence shows that appellant settled with the contractor, Mitchell. It is too plain for argument that he did so at his peril, and that, under the circumstances detailed, his asserted claim for damages against Mitchell cannot be permitted to impair or offset the availability of said sequestered fund for the payment of respondent's claim. (*Hampton* v. *Christensen,* 148 Cal. 729, [84 Pac. 200].)

But the settlement with Mitchell is a complete answer to appellant's contention. The latter's testimony is: ''There were other subcontractors on the building. I settled with all the rest except Mannix. Some got sixty per cent and some got more, I think. I also settled with Mitchell.'' His *settlement* with Mitchell, of course, included whatever claim he might have for a reduction of the contract price in consequence of said delay. We must presume that appellant was allowed whatever he was entitled to. Suitable allowance having been made by the contractor, manifestly the owner could not urge an abatement therefor from the just claim of respondent.

Moreover, the acceptance of the building, in the absence of fraud or mistake, neither of which is urged, implies a waiver of any claim for damages on account of nonperformance in any particular. (*Moore* v. *Kerr,* 65 Cal. 519, [4 Pac. 542]; *Baltimore etc. Ry. Co.* v. *Scholes,* 14 Ind. App. 524, [56 Am. St. Rep. 307, and cases collected in note, 43 N. E. 156].)

Finally, appellant was an unconditional guarantor of the obligation of Mitchell to pay respondent for his work. His liability is, therefore, coextensive with that of the principal obligation. It is no doubt true, as asserted by appellant, that ''Wilson, in assuming Mitchell's liability to Mannix, acquired thereby all defenses and claims which Mitchell might assert against Mannix, and it cannot be said that Wilson has waived any defenses or that he is estopped from asserting them. (1 Brandt on Suretyship and Guaranty, secs. 255, 259; 20 Cyc. 1487.)'' But Mitchell could not urge his own failure to comply with the contract as a defense against the claim of respondent, and the court has found, as we have seen, upon

sufficient evidence that there was no fault upon the part of Mannix. It follows necessarily that appellant is liable for the debt regardless of the said ruling of the court.

In any view that we may take of the case we can see no merit in the appeal, and the judgment and the order denying the motion for a new trial are affirmed.

Chipman, P. J., and Hart, J., concurred.