[Civ. No. 3779.   Fourth Dist.   Sept. 19, 1949.]

FABIO BANDUCCI, Respondent, v. FRANK T. HICKEY, INC. (a Corporation), Appellant.

B. E. Ahlport and L. R. Deadrich for Appellant.

Mack & Bianco for Respondent.

GRIFFIN, Acting P. J.—This is an action to recover damages for breach of an oral agreement to level land. On February 21, 1946, plaintiff bought from one Murdock 160 acres of land in Kern County. Plaintiff, who spoke but little English, orally authorized Murdock to arrange for grading and leveling the land. He set a limit of $50 per acre as the cost price. Plaintiff entered into a written agreement with one Claborn to employ a licensed civil engineer to survey the 160 acres, and Claborn agreed to level that land at $50 per acre and according to the grade map or grid sheet prepared by such

engineer, and "in accordance with recognized land-leveling practice in this area," so that plaintiff "may be able to farm said land with row crops and to irrigate same fully and efficiently," and Claborn agreed "to use every effort to have said work completed within one month from date of this instrument" (Feb. 24, 1946) ". . . it being understood" that plaintiff "is desirous of getting land prepared in time to plant a crop of cotton . . . for the 1946 season." An engineer, since deceased, was employed by Murdock. He surveyed and prepared a map or grid sheet showing the contour. Elevation stakes were set and marked at each 100-foot square. Claborn was to farm the 160 acres under a share-cropping lease executed April 1, 1946. Irrigating water came from a well located in the southeast corner of the south 80 acres. Claborn leveled this portion. His progress was so slow that the job threatened to drag into the planting season before he could grade the north 80 acres. Plaintiff, through his agent Murdock and Claborn, besought defendant corporation to undertake the grading and leveling of the north 80 acres through its representative, Mr. Davis.

The conversation surrounding the execution of the oral agreement is at variance. Davis testified that he agreed to do a good job of leveling according to the map; that he noticed the stakes on the property; that Claborn produced the map and the three of them looked it over carefully and took the yardage figures; that Claborn was going to plant cotton; that he never saw the Claborn agreement and did not know its terms; and that nothing was said about the land having to be leveled in accordance with recognized land-leveling practices in Kern County and to adequately and effectively irrigate to row crops. Murdock testified that Davis said he would help Claborn out and level the north 80 acres for the agreed price of $4,000; that he would "level it so it would irrigate for row crops" and in accordance with the best practice of land-leveling in this area and according to the terms of the written agreement between Banducci and Claborn; that he did not believe this written contract was produced at any time but that he "stated" to Davis the "terms" of it.

Defendant company immediately set about executing the oral agreement as to the north 80 acres while Claborn was finishing the south 80 acres. Murdock examined the job on many occasions. Claborn also checked the north 80-acre job. Midway through it, Davis asked Claborn for a progress payment. Plaintiff paid $2,000 on April 16th. On termination

of the work (Apr. 30, 1946) he paid defendant $2,000. Claborn farmed the south 80 acres and during the time he was on the property the north 80 acres were never farmed nor planted. Apparently, it was too late to plant it that season, and Claborn's crop on the south 80 acres was a failure. He left the property late in 1946. On December 6, 1946, plaintiff leased the 160 acres to one Sanders who attempted to run water on the north 80 acres but found it would not run and he was unable to irrigate it so he gave up his lease. Plaintiff engaged another engineer to survey the north 80 acres to bring the cuts and fills left by defendant to a level condition. He found depressions and rises to the extent of one-half foot. There was no uniform fall and it was impossible to irrigate under the conditions existing so he redesigned the lay of the land. In February, 1947, Banducci told Davis about the discovery, showed it to him, and demanded that it be corrected. Davis disclaimed responsibility and claimed the fault and inaccuracies were due to the workmanship of the previous engineer employed by Murdock under the Claborn agreement.

Plaintiff testified that prior to irrigating the north 80 acres he had spent $1,125 for gypsum and that by releveling that acreage this gypsum would be lost; that the cost of such releveling so that it would irrigate when planted to row crops was about $3,000. According to Davis, Claborn, who left the county and was not available as a witness, stated that the work was satisfactory to him when the final payment was made. The jury returned a verdict for plaintiff for $2,890.

On appeal from the judgment defendant argues mainly that the evidence does not support the judgment in that there is no proof that defendant breached its contract; that there is no evidence as to what the recognized land-leveling practice was in that county; and that since plaintiff accepted and took possession of the completed work, in the absence of fraud or mistake, plaintiff cannot recover, citing such cases as *Mannix* v. *Wilson,* 18 Cal.App. 595 [123 P. 981] ; *Atowich* v. *Zimmer,* 218 Cal. 763 [25 P.2d 6] ; and *Blethen* v. *Blake,* 44 Cal. 117.

There is testimony that defendant company agreed to do the work according to the terms of the Claborn agreement, which terms were stated to defendant's agent and which contained a proviso that the land should be leveled so that it could be adequately and efficiently irrigated when planted to row crops. It is apparent it was not so leveled. The evidence produced is in conflict as to whether this fault was due to the engi-

neer's figures or due to poor workmanship on the part of defendant corporation. The jury apparently decided this issue against defendant. We are unable to disturb this finding. (*Chichester* v. *Seymour,* 28 Cal.App.2d 696 [83 P.2d 301].) Under the circumstances related, testimony as to what the "recognized land-leveling practice in that county" was, would seem to be superfluous. There is sufficient evidence to support the jury's finding that the contract was breached by the defendant because the land could not be adequately and efficiently irrigated when planted to row crops.

A mere acceptance, without more, does not necessarily preclude the owner from showing that the work was done in an unworkmanlike manner, especially when the defects were latent or where the owner had no reasonable means of ascertaining such defects and, when ascertained, gave timely notice thereof, even though he has paid the contract price. An instruction to this general effect was properly given. (*Leonard* v. *Home Builders,* 174 Cal. 65, 68 [161 P. 1151, L.R.A. 1917C 322] ; *Summers* v. *L. F. S. Syndicate,* 46 Cal.App. 250, 255 [189 P. 286] ; *Bryson* v. *McCone,* 121 Cal. 153 [53 P. 637] ; *Howard* v. *Thompson Lumber Co.,* 106 Ky. 566 [50 S.W. 1092] ; 17 C.J.S. 1102-1105 ; *Stephens* v. *Weyl-Zuckerman & Co.,* 33 Cal.App. 566 [165 P. 975] ; vol. 3, Page on Contracts, p. 2320.)

It has been held that a contractor is bound to discover defects that are reasonably discernible or patent, and where he knows, or has reason to believe, that the plans are defective and follows such plans without pointing out the defects to the owner or architect, he is not entitled to recover if the building proves insufficient because of such defects. (*Northern Pacific Ry. Co.* v. *Goss,* 203 F. 904 [122 C.C.A. 198] ; 17 C.J.S. 1108, and cases cited.) The trial court gave an instruction to this effect, to which defendant objects. The cited cases are sufficient authority for the rule stated. The questions whether defendant perfected the work according to plans and specifications furnished by Claborn and Murdock, or whether plaintiff unqualifiedly accepted the workmanship of defendant and accordingly waived any right to recover for damages, or whether there were in fact any latent defects which were subsequently discovered, were all factual questions for the jury to determine under proper instructions. (11 C.J.S. 1101.)

Defendant takes exception to certain instructions given, refused and modified. The court refused defendant's instruction ". . . that if the plaintiff paid for the work done by the

defendant and thereafter took possession of the land by their tenant . . . there was an acceptance of defendant's work, and in the absence of any showing of fraud or mistake, implies a waiver of any claim for damages against the defendant and your verdict should be for the defendant.'' It will be noted that the instruction thus refused does not contain any of the exceptions above noted and, as worded, it tells the jury it should, without exceptions, return a verdict for the defendant if payment was made and possession was taken, and no fraud or mistake was shown. ■ The court did give an instruction bearing on the subject matter, that is: ''. . . that payment by the plaintiff to the defendant for its work in leveling the land created a presumption that the defendant's work was accepted.'' This instruction was modified by taking that portion from an instruction offered by defendant, but which omitted the statement that, in the absence of fraud or mistake payment ''implies a waiver of any claim for damages . . . and your verdict should be for the defendant.'' It is argued that the court's ''evisceration'' of this portion of the instruction deprived the jury of an instruction on the legal effect of acceptance and its consequences. No case has been cited which holds that mere payment for work and the taking of possession of the property thereafter is, as a matter of law, a waiver of any claim for damages for delay or imperfections. The general rule is that whether or not a waiver is to be implied is a question of fact which must be determined from all the surrounding circumstances of the case. (*Leonard* v. *Home Builders, supra,* p. 68.) Considering this instruction, together with the other instructions given, the subject matter was sufficiently covered.

■ Finally, it is contended that the trial court erred in receiving into evidence maps of the survey of the land made in 1947 and the testimony of the engineer based thereon. The argument is that such evidence was remote and would not show what the condition of the land was, as to grade, etc., in April, 1946, when defendant completed its work upon the land. There was evidence of the condition of the land in 1946; that it had not subsequently been farmed; that its subsequent condition, as reflected by the second survey in 1947, was not due to erosion, application of water, or other causes; and that date was the first opportunity plaintiff had to actually know that water would not flow effectively to irrigate row crops. This was sufficient to support a reasonable inference that the

same condition existed in 1946. If the connection established is sufficient to support a reasonable inference that the conditions shown to exist at the later time also existed at the earlier date, the element of time between the two dates is not necessarily important. There was a prima facie showing that the conditions complained of did not change during the period involved. No error in this respect appears. (*Koyer* v. *Detroit F. & M. Ins. Co.*, 9 Cal.2d 336, 343 [70 P.2d 927].)

Judgment affirmed.

Mussell, J., concurred.

A petition for a rehearing was denied October 18, 1949, and appellant's petition for a hearing by the Supreme Court was denied November 17, 1949.