[L. A. No. 279.  Department Two.—June 4, 1898.]

ISAAC H. BRYSON, Respondent, v. A. J. McCONE et al.,
Appellants.

CONTRACT FOR PLANT OF MACHINERY—RECORD—MECHANICS' LIEN LAW.—A
contract to furnish a new plant of machinery for iceworks, to be
placed in a building and upon foundations to be provided therefor
by the owner, is not within the purview of the mechanics' lien law,
and no record is required to be made of such a contract to insure
its validity, though the contract price is more than one thousand
dollars.

ID.—ACTION FOR DAMAGES—MATURITY OF CAUSE OF ACTION—WAIVER.—
Where, by the terms of the contract, it was to have been fully
performed several months prior to the commencement of an action
for damages for its breach in failing to furnish materials as agreed,
and there was no agreement to extend the time for performance,
and the evidence showed that defendants refused to complete the
machinery except upon condition that plaintiff would accept cer-
tain additional work and material as full satisfaction, and waive
his claim for damages, which plaintiff refused to do, the mere fact
that without objection from plaintiff the defendants continued to
do some work about the plant, trying to make it work, up to and
including the day on which the action was commenced, does not
establish a waiver of the claim for damages, nor show that the
action therefor was prematurely commenced.

ID.—REFUSAL TO COMPLETE WORK—IMPROPER CONDITION.—The defendants
had no right to insist as a condition of completing the work that
plaintiff should waive his claim for damages; and a refusal to com-
plete the work, except on that condition, was a refusal to perform
the contract, and warranted a finding that defendants had ex-
pressly refused to complete the work.

ID.—DEMAND.—No demand was necessary to constitute a cause of action for
damages for failure to furnish materials which defendants had
agreed to furnish.

ID.—EVIDENCE—SPECIFICATIONS OF CONTRACT—HARMLESS ERROR.—Where the
plaintiff had testified that the contract and specifications were fur-
nished by an agent employed by the defendants, the defendants
had a right to contradict the plaintiff by showing that the con-
tract was furnished by plaintiff and not by defendant, and to re-
fuse to permit such proof was error, but it is rendered harmless,
and not ground for reversal, where it appeared from subsequent
testimony for the defendants that such agent was acting for both
parties in pursuance of an understanding between them in fur-
nishing the contract and specifications.

ID.—DEFECTIVE PLANT—GUARANTY OF EFFICIENCY.—Where the defendants
undertook not only to make a plant according to certain specifica-

tions, but also guaranteed that it would do certain work, that was a warranty of the scheme as well as an undertaking to do good work in furnishing a plant in accordance with the scheme, and it is no defense to an action for damages for defective materials that an efficient plant could not be constructed under the specifications, especially where the evidence shows that the work was not done in accordance with the contract, and was thoroughly defective.

ID.—DAMAGES AFTER SUIT BROUGHT.—The plaintiff was entitled to recover damages accruing after suit brought upon a cause of action which was complete when the suit was begun, where the damages proved were the natural and necessary consequence of the wrong.

ID.—LOSS OF PROFITS.—The plaintiff may prove and recover for the loss of profits which he would have realized had the plant been constructed in accordance with the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Walter Van Dyke, Judge.

The facts are stated in the opinion of the court.

Knight & Harpham, and Ben Goodrich, for Appellants.

W. P. Gardiner, J. S. Chapman, and L. R. Garrett, for Respondent.

TEMPLE, J.—This action was brought to recover damages for an alleged breach of contract to convert the iceworks of the Consumers' Ice Company at Los Angeles into the Kitton system of ice making, to be located at Riverside, and to furnish certain materials. The work was to be done and the materials furnished according to specifications, describing with apparent minuteness what was to be done. Generally, they were to take down and remove to their shop the old machinery, and were to set the new machinery up at Riverside so as to make a complete ice plant.

Among the things to be furnished by defendants were six new combined tanks of the Kitton system, made of Oregon ship timber, three-inch stock, surfaced on one side and two edges, and securely bolted every sixteen seconds. Each tank to contain from sixteen to twenty molds made of number twelve steel plate, double riveted and properly caulked. All seams to be coated with P. B. paint before being riveted, and the bottom of such parts as come in contact with the wood to be coated with

P. B. paint. Each tank to contain two thousand eight hundred feet of pipe for the expansion of ammonia; also to have proper circulating pumps and connecting pipes, counter-shafts and pulleys. Each tank, when completed, to be of sufficient dimensions to contain ten tons of ice.

It was stipulated, however, that: "All buildings, foundations, in and about the factory, the flumes, waterwheel, and sittings of waterwheel, tailrace, ropes, or belts for transmission of power, all freights and cartages, are at the expense of I. H. Bryson, and are outside of this contract."

The specifications contained the following guarantee on the part of the defendants: "The new works, when completed, to have a daily average capacity of fifteen tons of good, hard, merchantable ice, free from smell, taste, and objectionable core in can. We guarantee for one year all workmanship and material furnished by us, provided no disarrangement is caused from want of attention of person in charge, and if run according to our instructions. The Fulton Engine Works guarantee that after machine is fully charged, that the yearly additional supply of ammonia shall not exceed four full drams of ammonia, through any defects of workmanship on their part, or through any defects in any of the material furnished by them, while the same is under the charge of thoroughly competent engineers, who will follow the instructions of said Fulton Engine Works."

The works were to be completed and ready to start to work by March 1, 1892. The consideration to be received by defendants was twelve thousand five hundred dollars.

Plaintiff recovered judgment for four thousand one hundred and two dollars and seventy-seven cents, and defendants appeal from the judgment and from the refusal of a new trial.

The first point urged by the appellants is that the contract upon which suit was brought is void. It is contended that it is a builder's contract, which, under section 1183 of the Code of Civil Procedure, must be filed in the recorder's office of the county in which the work was to be done; otherwise, it is void. It appeared that the contract upon which this action is founded was not so filed. Section 1183 provides that the contract for the work between the owner and his contractor, when the amount to be paid under it exceeds one thousand dollars, shall be in writ-

ing and filed in the recorder's office of the county, "otherwise they [it?] shall be wholly void, and no recovery shall be had thereon by either party thereto."

In *Hinckley v. Field Biscuit Co.*, 91 Cal. 136, this section was considered, and it was there held that the word "contractor," as used in that section, does not apply to one who contracts to furnish material only.

That case is relied upon as authority here by the respondent, and it seems to me it is quite similar to this in all its essential facts. The case went off upon a demurrer to the complaint, in which it appeared that the claimant contracted to construct at its own works and deliver and put in place on foundations to be prepared by the owner a complete steam plant, machinery and pump, the several parts of which were enumerated in the complaint. The list is a long one, but it contains the following: Two steam drums, each thirty inches in diameter by three feet long, connected with the boiler with twin nozzles, riveted to boiler and drum, with face jointed between; two wind drums eighteen inches in diameter by six and one-half feet long, connected to boilers by twin nozzles; smokestack thirty inches in diameter and fifty feet high; Corliss engine, etc. This entire steam plant was to be put up on foundations prepared by the owner, and also connections for steam, water, and exhaust—made ready for use.

That was certainly as much of a structure as that contracted for in this case. The only apparent difference pointed out by defendants is, that in this case the tanks were in fact built on the premises, and the woodwork in the brine tank was sublet. There was nothing in the contract, however, as to where they should be made, and all might have been made at the shops and brought to the premises ready to be set up. And when put up they only constituted a machine to be used in the building where they were to be placed. In the case above cited it was held that the work done in placing the machinery in position, ready to be used, was but the completion of the contract to deliver.

A similar ruling was made in *Roebling etc. Co. v. Humboldt etc. Co.*, 112 Cal. 289. There the contract was to set up in defendant's building a complete electrical plant, consisting of dynamos, converters, switch boards, lamps, etc., with necessary

wiring and connections. In that case, it might have been argued plausibly that the plant was made on the premises. Much of the machinery and materials, such as the wire, for instance, was as characterless as the Oregon ship timber, the bolts and steel plates used by the defendants in the construction of the tanks. Yet it was held there, too, that putting up the machinery was but a part of the agreement to deliver material.

Questions of this character are often very difficult—though as pointed out in *Bennett v. Davis*, 113 Cal. 337, 54 Am. St. Rep. 354, they are not altogether new—being quite similar to a much vexed question which sometimes arose under the statute of frauds, the question as to whether a certain agreement was to manufacture or sell goods. I think this case is clearly within the rule laid down in *Hinckley v. Field's Biscuit Co., supra*, and also in *Roebling v. Humboldt etc. Co., supra*.

The appellants contend that the suit was prematurely brought. It was commenced on the sixteenth day of July, and by the terms of the agreement the contract was to have been fully performed by the 1st day of March preceding. Yet without objection on the part of the plaintiff the defendants continued to do some work about the plant, trying to make it work, up to and including the very day on which the action was commenced. There was no agreement to extend this time, or to waive damages for the failure to complete the work in time. On the contrary, there was during the whole period a controversy and an attempt to compromise the matter, and the defendants refused to complete the machine except upon the condition that plaintiff would accept certain additional work and material as full satisfaction, waiving his claim for damages. This plaintiff refused to do, but insisted that the defendants should complete the work and pay him damages besides. This was a refusal on the part of the defendants to perform the contract. They had no right to insist as a condition that plaintiff should waive his claim for damages.

But consent on the part of plaintiff that defendants might continue the work after the stipulated time was not a waiver of damages or of the breach. Upon the breach plaintiff, not being himself in default, had the right to rescind or permit the defendants to complete the work and sue for damages occasioned by

the default. This need not be pursued further, however, because, as already said, the evidence was sufficient to warrant a finding that defendants had expressly refused to complete the work. If McCone, speaking for the firm, refused to go on except on conditions which he had no right to ask, it was a refusal to go on with the contract, and it did not matter that Bell, the other partner, had not refused.

It is said that no cause of action is shown because it is not averred that demand had been made on defendants that they pay the damages, and that they refused. No demand was necessary. The breach of contract which injured plaintiff, and which constituted his cause of action, was the failure to furnish the materials which defendants had agreed to furnish. It was not a contract to pay money, a breach of which could only consist in a refusal to pay. Such was the contract in *Curtiss v. Bachman*, 84 Cal. 216. At least the court there so held. (See *Dunn v. Steubing*, 120 N. Y. 232.)

At the trial, the defendants' counsel asked one of the defendants, while on the stand as a witness, to relate the circumstances under which the contract was made. Upon objection being made, counsel explained that the particular circumstances he desired to prove were that the written contract was furnished by the plaintiff and not by the defendants. The objection was sustained, and the ruling is assigned as error. The plaintiff had testified that the contract and specifications were furnished by Kitton, and that Kitton was employed by the defendants. Respondent's brief is largely devoted to showing his advantage resulting from such fact. From the standpoint of plaintiff's counsel upon the trial and here, nothing can be plainer than that the proposed evidence was both relevant and material. It was simply and only contradictory of evidence produced by plaintiff. The ruling will not necessitate a reversal, however, both because, notwithstanding the ruling, the witness proceeded to state the particular circumstances which counsel desired to prove—for example, he testified that Kitton was acting for both parties in pursuance of an understanding between plaintiff and the defendants—and also because the evidence was immaterial.

During the trial the defendants, in various ways, raised the point that they simply undertook to furnish a machine built ac-

cording to certain specifications, and that they were not responsible for inherent defects in the Kitton system, and they contended that that system was defective, and that an efficient ice plant could not be constructed under the specifications which they were by their contract required to follow.

We had occasion to consider a similar question in *Bancroft v. San Francisco Tool Co.*, 120 Cal. 228. The difference between the cases is mainly that there was no guaranty of efficiency in that case, and in this case there was such a guaranty. Considering the special undertaking of the defendants, I cannot see how it matters who furnished the specifications. The defendants undertook not only to make a plant according to the specifications, but also that it would do certain work. This was a warranty of the scheme, as well as an undertaking to do good work themselves in furnishing a plant in accordance with the scheme. It is fair to add that the evidence conclusively shows that the work was not done in accordance with the contract, but was about as defective as it could well be.

Damages which accrued after the suit was commenced were properly allowed. The plaintiff could not maintain another suit for damages which resulted from the breach which had already occurred. His cause of action was complete when the suit was begun, and the damages proved were the natural and necessary consequence of the wrong. (*Alfter v. Hammitt*, 54 Mo. App. 303; *Behrman v. Linde*, 47 Hun, 530; 5 N. Y. Supp. 898; *Filer v. New York Cent. etc. R. R. Co.*, 49 N. Y. 42.)

Nor was there error in permitting the plaintiff to show the profits which he would have made. (*Hitchcock v. Supreme Tent*, 100 Mich. 40; *Wakeman v. Wheeler etc. Mfg. Co.*, 101 N. Y. 205; 54 Am. Rep. 676; *Hawthorne v. Siegel*, 88 Cal. 167; 22 Am. St. Rep. 291; *Lambert v. Haskell*, 80 Cal. 611.)

Judgment and order affirmed.

Henshaw, J., and McFarland, J., concurred.