### STINE OIL & GAS CO. v. ENGLISH.*
(No. 8333.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 26, 1916. On Motion for Rehearing, April 29, 1916.)

1. TRIAL ☞352(4)—SPECIAL ISSUES.
In an action on an alleged oral agreement for work done in converting an oil well, abandoned as such, into a gas well, there being no controversy as to the kind of work necessary, or as to whether the person making the agreement with the plaintiff was acting as president of the defendant company, a special issue submitted to the jury, requiring them to find whether or not the defendant's president employed the plaintiff to do further work on the well, to make it produce gas after it was abandoned as an oil well, when taken with another issue, requiring the jury to find the rate per day agreed upon, if they found that an oral contract existed, was proper and sufficient to cover the issues raised by the testimony.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 840; Dec. Dig. ☞352(4).]

2. TRIAL ☞351(5)—SPECIAL ISSUES.
In such action, the existence of the contract and the rate per day agreed upon having been submitted to the jury by special interrogatories, a requested instruction submitting as an issue whether or not F. S., as president of defendant corporation, had stopped the drilling, and had by verbal contract employed the plaintiff to shut off the water for the purpose of making the gas well, and promised to pay the plaintiff the sum of $15 per day, was properly refused.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 834; Dec. Dig. ☞351(5).]

3. TRIAL ☞352(4)—SPECIAL ISSUES.
In an action under an alleged oral agreement to finish as a gas well one bored under a written agreement specifically providing for an oil well, an instruction directing the jury to find whether defendant with knowledge that the original contract between the parties had been completed, directed the way in which the work should be done from and after its abandonment as an oil well, was proper.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 840; Dec. Dig. ☞352(4).]

4. CONTRACTS ☞322(1)—BREACH—EVIDENCE —BURDEN OF PROOF.
In an action on an alleged oral agreement to convert into a gas well an oil well bored under a written agreement providing for a price per foot up to 2,000 feet, which had been terminated, it being necessary to withdraw a portion of the casing in returning to the gas sand, which caused water and sand to flow into the well, the burden of proof was not on the plaintiff to show that the work done after pulling the 5-inch casing was made necessary by water coming from below the gas sand, or that, after being requested not to drill any further for oil, he drew the 5-inch casing, cased off all water above the gas sand, bailed, sand-pumped, and put the well in good condition, since, as he was not required to do the work of returning to the gas sand under the written contract, it was necessarily covered by the parol contract pleaded.
[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1306, 1465, 1754, 1772; Dec. Dig. ☞322(1).]

5. APPEAL AND ERROR ☞690(1) — ASSIGNMENTS OF ERROR—STATEMENT.
Where it does not appear from a bill of exceptions that the defendant was not notified to produce the original of a check, or that he did not have the check in court, an assignment of error that the plaintiff had, over objection, been permitted to testify as to the check, will not be considered.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2897, 2904; Dec. Dig. ☞690(1).]

6. TRIAL ☞219—INSTRUCTIONS—DEFINITION OF TERMS — KNOWLEDGE OF LANGUAGE — PRESUMPTION.
The terms "burden of proof" and "preponderance of the testimony" being of common use, it will not be presumed that the jury did not understand them; and the refusal of instructions defining such terms is not ground for reversal.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 489; Dec. Dig. ☞219.]

7. TRIAL ☞217 — INSTRUCTIONS — DUTY OF JURORS — COMPLIANCE WITH OATH — PRESUMPTION.
It will not be presumed that the jury would be inclined to go contrary to their statutory oath to find upon the issues submitted without reference to their opinions as to the legal rights of the parties, and a refusal to instruct on the duty of jurors in that respect is not reversible error.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 483, 485; Dec. Dig. ☞217.]

8. CONTRACTS ☞354—APPEAL AND ERROR— FINDINGS.
In an action upon an alleged oral agreement, where the only controverted issue of fact was the existence of the agreement, the neglect of the court to require a finding that the plaintiff did the particular work alleged in his petition was not error.
[Ed. Note.—For other cases, see Contracts, Dec. Dig. ☞354; Trial, Cent. Dig. §§ 858, 859.]

9. DAMAGES ☞225—ACTIONS—WORK PERFORMED AFTER COMMENCEMENT OF SUIT.
In an action on an oral contract to finish as a gas well an oil well drilled under a written contract where defendant did not object to the completion of the work after the institution of the action, or seek to abate the action for that reason, plaintiff's cause of action being upon his entire contract, he was entitled under an amended petition to recover for the work performed after the institution of the suit.
[Ed. Note.—For other cases, see Damages, Cent. Dig. § 567; Dec. Dig. ☞225.]

10. CONTRACTS ☞232(1)—CONSTRUCTION—INCIDENTAL EXPENSES.
Under an oral contract to do additional work, changing a proposed oil well into a gas well, at a specified rate per day, the absence of proof that expenses alleged by the plaintiff to be incidental to the work were to be paid by the defendant, in addition to the rent per day,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.
185 S.W.—64   *Application for writ of error pending in Supreme Court.

they became a part of the work which he undertook to perform at the agreed price.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071, 1073–1075½, 1078–1086; Dec. Dig. ☞232(1).]

On Motion for Rehearing.

11. WORK AND LABOR ☞13—ACCEPTANCE OF SERVICES—QUANTUM MERUIT.

In an action upon an alleged oral agreement to do additional work in changing a proposed well into a gas well, where the plaintiff showed the performance of work of the value alleged in the agreement upon the repudiation of the contract by the defendant, so as to deprive the plaintiff of the legal right to recover on said contract for work done after the institution of the suit, he was entitled to recover upon his alternative claim of quantum meruit.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 28; Dec. Dig. ☞13.]

Appeal from District Court, Clay County; J. W. Akin, Judge.

Action by H. W. English against the Stine Oil & Gas Company. From a judgment for plaintiff, defendant appeals, and plaintiff cross-appeals. Reformed and affirmed.

Samuels & Brown, of Ft. Worth, and Wantland & Parrish, of Henrietta, for appellant. Arnold & Taylor, of Henrietta, and Huff, Martin & Bullington, of Wichita Falls, for appellee.

DUNKLIN, J. The Stine Oil & Gas Company employed H. W. English to drill a well on a tract of land in Clay county, for the purpose of obtaining oil and petroleum therefrom. The contract of employment was in writing, in which the Oil Company was designated as the party of the first part and English as the party of the second part, and is as follows:

"I. Party of the second part hereby agrees to drill a well for the party of the first part for the purpose of obtaining therefrom oil and petroleum; said well to be sunk on a forty-acre tract of land in Clay county, Texas, near Petrolia, and consisting of lots 3 and 6, in block 1, according to the plat of land belonging to estate of J. D. Stine and M. F. Stine, deceased, of record in Book 1, page 16, of the Plat Records of Clay County, Texas, at a point to be designated by party of the first part.

"II. Said party of the second part agrees to drill said well to a depth of two thousand (2,000) feet unless oil in paying quantities is discovered at a lesser depth.

"III. Party of the second part is to supply, furnish, provide, and assemble at his own expense (except as hereinafter specified), at the place where said well is to be sunk, all and singular the necessary and requisite labor, fuel, material, machinery, appliances, apparatus, equipment, tools, utensils, and connections to enable him to sink and complete said well in a skillful, efficient, and scientific manner and way under the terms of this contract.

"IV. Diameter of the well when completed shall be 6⅝ inches, if possible, and all and singular the appliances, machinery, apparatus, and utensils shall be of standard make and adequate as well as efficient for the purpose of this contract.

"V. If for any reason before the final completion thereof the drill should break, or said well cave in or become clogged or impassable, so as to prevent its ultimate completion, then party of the second part shall be under obligation to sink another well and perform an equivalent work without additional charge therefor, at another point on said tract.

"VI. Party of the second part agrees to begin the drilling of said well within thirty days from the date hereof, and to prosecute such work with diligence, efficiency, and good faith until the completion of the same under the terms of this contract, and the ultimate period within which said well shall be completed is hereby fixed at three months from the date hereof, unless further time is granted for that purpose by party of the first part. It is further agreed that said well is to be drilled with standard rig and cable tools.

"VII. Party of the first part is to furnish the casing for said well, to be delivered on the ground where said well is to be sunk.

"VIII. Each party is to pay one-half of the cost of fuel, which total cost shall not exceed seven and 50/100 dollars ($7.50) per day, or, in other words, the share of such expense to be borne by party of the first part shall not exceed three and 75/100 dollars ($3.75) per day; water for drilling purposes to be furnished by party of the first part in tank adjacent to well, but the pumping thereof to be done by party of the second part at his own expenses.

"IX. In drilling said well, party of the second part agrees to report to party of the first part the sands found in said well, and said party of the second part, at request of party of the first part, agrees to stop the drilling of said well at any sand when requested so to do, and test the same to determine whether or not it will produce oil in paying quantities, and, if oil in paying quantities is found at a lesser depth than 2,000 feet, then party of the second part agrees to stop the drilling of said well and finish the same in a workmanlike manner.

"X. If the said well is completed to a depth of 2,000 feet and oil in paying quantities has not been found therein, then party of the second part agrees, at his own cost, to pull the casing in said well, and unjoint the same, and have the same properly stacked: Provided, however, that it is possible for said casing to be drawn from said well with the machinery then on hand.

"XI. Party of the first part agrees to pay party of the second part, and party of the second part agrees to accept, as consideration for his performance of this contract, the sum of three dollars ($3.00) per foot to the point of completion, not to exceed 2,000 feet, which consideration is to be paid on the completion of the well under the terms of this contract.

"XII. Party of the first part is to be the judge, as the drilling of said well proceeds, whether oil is found in paying quantities, and when it shall be determined by said party of the first part, its agents and servants, that oil is or is not to be found in paying quantities, then the work of drilling said well shall desist and cease at its request, and party of the first part shall not be liable for any further costs thereof.

"XIII. All and every risk, hazard, damage, and liability in the matter of assembling the material, and in drilling said well and in connection therewith, and in testing and demonstrating said well, shall be and is hereby made the sole responsibility of party of the second part: Provided, however, that in the event the rig should be blown down or destroyed by a cyclone or tornado, the cost of restoring same shall be borne by party of the first part.

"XIV. When completed, unless prevented by too great a volume of gas or oil, the well shall be thoroughly bailed and 'sand-pumped' by said party of the second part, until all drillings and sediment are removed therefrom and the well thoroughly cleaned.

"XV. Party of the second part agrees to de-

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

liver said well, when completed to the depth required, to party of the first part in good order, free and clear of all obstructions."

The well was drilled to a depth of 1,719 feet into a gas sand, which produced gas at the rate of 16,000,000 cubic feet per 24 hours. Eight-inch casing had been set at a depth of 1,694 feet, and 6-inch casing was set at a depth of 1,719 feet, where the gas was struck. The well could then have been finished and used for a gas well, and under a contract with the Lone Star Gas Company, which already owned the gas rights upon said land, could have been turned over to that company at a price equal to the cost of the work up to that time. But the officers of the Oil Company, preferring an oil well instead, decided to have the well drilled deeper in the hope of securing oil, and in obedience to instructions to that effect English continued drilling, and, having struck water below the gas sand, he shut it off by using a 5-inch casing, which was continued down to a depth of 1,783 feet, when he was directed by Mr. Fitch Stine, president of the Oil Company, to cease drilling. English was then directed by him to withdraw the 5-inch casing and return to the gas sand and finish the well as a gas well, which was afterwards done. The Oil Company paid English, for drilling the well to a depth of 1,783 feet, the contract price of $3 per foot, with the exception of a small balance of $138.05.

This suit was instituted by H. W. English against the Stine Oil & Gas Company to recover the aforesaid balance of $138.05 under the original contract, and also for the work he performed and certain expenses incurred in returning to the gas sand and finishing the well as a gas well after the company had decided to abandon its further efforts to procure oil. The demand for the work in returning to the gas sand and finishing the well as a gas producer was predicated upon an alleged parol contract on the part of the company, represented by Mr. Fitch Stine, its president, and Dr. Rumph, its vice president, to pay English for the alleged extra work at the rate of $50 per day, which was alleged to be the usual and customary price for such work with the drilling outfit used by plaintiff therefor. The claim for the expenses incurred in performing such alleged extra work, aggregating $155.85 and consisting of divers characters, such as telephone charges, hired help, etc., an itemized statement of which was attached to the petition as an exhibit, was based upon allegations that the same were necessary and that the defendant thereby impliedly became bound to pay the same. But, according to the plaintiff's contention, said extra work, for which he claimed compensation at the rate of $50 per day, did not include the drawing of the 5-inch casing, after the further drilling had been abandoned, which he admitted he was obligated to draw under and by virtue of the original written contract.

In its answer the defendant denied making the parol contract sued on, and specially pleaded as follows:

"In this connection this defendant affirmatively alleges: That on or about the 24th day of June, 1914, the plaintiff and defendant entered into a written contract by the terms of which plaintiff obligated and bound himself to drill, case, and complete and clean in a good workmanlike manner a well on lots Nos. three (3) and six (6), in block No. one (1), of land belonging to the Stine estate in Clay county, to a depth of not to exceed 2,000 feet, for the price of three ($3.00) dollars per foot. That drilling, casing, cleaning, and completing the well in good workmanlike manner and within the expressed and implied terms of said contract, meant the casing off of water from the top to the bottom of said well, all of which plaintiff was under obligation, by the terms of said contract, to do before the obligations assumed by him had been performed, and all work and material performed and furnished by plaintiff in connection with said well were performed and furnished under said contract; and any undue length of time consumed or seemingly additional work done to properly case off the water so as to leave the well dry were caused by the plaintiff negligently failing to case off the water as the well was being drilled. Defendant says that the said Fitch Stine and Dr. Rumph and each of them were without authority to make the verbal contract alleged in paragraph 3 of said petition."

The case was submitted to a jury upon special issues; such issues and the findings of the jury thereon being as follows:

"Special Issue No. 1. When the well about which this suit was brought was abandoned as an oil well, did Fitch Stine employ plaintiff, H. W. English, to do further work on said well in order to make it produce gas? Answer: Yes.

"Special Issue No. 2. If you have answered special issue No. 1 'yes,' then state what was the rate or remuneration per day agreed upon by the parties. Answer: $50.00.

"Special Issue No. 3. State from the evidence before you whether the defendant company or its officers and agents, with knowledge the original contract between the parties had been completed, directed the way in which the work should be done from and after October 17, 1914. Answer: Yes.

"4. The burden of proof is upon the plaintiff to establish his cause of action by a preponderance of the testimony.

"5. You are the judges of the credibility of the witnesses, and of the weight to be given their testimony, but the law of the case you will receive from the charges given you by the court and be governed thereby."

There was no controversy in the proof with respect to the number of days that English was employed in finishing the well, and that issue was determined by the court, the correctness of which has not been challenged. Judgment was rendered in favor of the plaintiff against the defendant for the sum of $2,942.90, being the amount sued for, less the sum of $776, with interest thereon at the rate of 6 per cent. per annum from this date. From that judgment the defendant has appealed.

[1] Complaint is made of the first issue submitted to the jury upon the following grounds: (1) That it did not require a finding of what particular work Stine employed English to do; (2) that it did not require

a finding on the entire contract alleged; (3) it did not require a finding of compensation which plaintiff alleged was agreed to be paid; and (4) it did not submit the issue as to whether or not Stine was acting as president of the defendant. The assignment is overruled, because the first and second issues, taken together, submitted all of the issues relative to the alleged contract concerning which there was any controversy in the testimony. There was no controversy as to the kind of work it was necessary for English to do in order to convert the well into a gas well, nor was there any controversy that, if Stine made the contract at all, as alleged, he was acting as the president of the defendant.

[2] And for the reasons just stated there is no merit in the appellant's second assignment complaining of the refusal of a requested instruction submitting as an issue whether or not—

"F. Stine, as president of the Stine Oil & Gas Company, after he had stopped the drilling on or about October 17, 1914, by verbal contract, employed H. W. English to shut off the water under direction of said Stine and Dr. Rumph, for the purpose of making a gas well, and promised to pay said English the sum of $50 per day."

[3] Error has been assigned also to the third issue submitted, on the ground that by that issue the court assumed as a fact that, when the drilling was stopped on October 17, 1914, plaintiff had performed all work required of him under the written contract, which was one of the vital issues in the case. That the defendant, through its officers, did stop the drilling on October 17, 1914, and did decide not to drill any further for oil, but to return to the gas sand and finish the well as a gas well, was proven beyond controversy. And we are of the opinion, further, that the written contract itself shows that the work done by English, after the further drilling for an oil well had been abandoned, in returning to the gas sand and finishing it for a gas well, was not work contemplated or covered by such written contract. The written contract specifically recites that the drilling was to be for the purpose of obtaining oil and petroleum, and there is nothing in that contract which in any manner indicates that a gas well was in contemplation of the parties. Neither was there any pleading by the defendant of mutual mistake in the terms of that contract.

[4] Error has been assigned to the refusal of two other special issues requested by the defendant reading:

"Do you find from the preponderance of testimony that the work which English did on the well, after he pulled the five-inch casing, was made necessary by water coming from below the gas sand? In this connection, you are charged as a matter of law that the burden of proof rests on the plaintiff to prove that the work was made necessary by the water coming from below the gas sand."

"Do you find from the preponderance of the testimony that H. W. English, after F. Stine

requested him not to drill the well any deeper, prior to October 20, 1914, drew the 5-inch casing, cased off all water above the gas sand, bailed, sand-pumped the well, and put it in good order, free and clear of all obstructions? In this connection you are instructed as a matter of law that the burden of proof is on H. W. English to establish the affirmative of this issue."

English testified that, when the defendant's officers decided to drill no further for oil, the well was then dry; in other words, that at that depth all water had been shut off by the 6-inch casing down to the gas sand, and by the 5-inch casing below the gas sand. That the well was dry when further drilling was abandoned seems to be undisputed by any evidence. It was also shown beyond controversy that when the 5-inch casing was withdrawn, and the work of completing the well as a gas well had begun, a great volume of water came into the well, which had to be shut off. According to the testimony of English, all of this water came from a point below the 6-inch casing, and was water that had been shut off by the 5-inch casing before that casing was withdrawn. But the defendant introduced some testimony to the effect that that water came from behind the 6-inch casing. If it could be said that the written contract between the parties required English, after further drilling for oil had been abandoned, to return to the gas sand and finish the well as a gas well, then clearly the requested issues should have been submitted. But, as said already, he was not required to do that work under and by virtue of that contract, and, being work not required by that contract, it was necessarily covered by the parol contract pleaded by plaintiff, if that contract was in fact made. Accordingly, there was no error in refusing the submission of the requested issues referred to.

[5] Over objection of the defendant, English was permitted to testify that on December 20, 1914, he received a check from the defendant for $159, and that on the left-hand corner of the check it was noted that the same was given in payment of expenses by English for the defendant company, and objection was made to that testimony on the ground that the check itself was the best evidence, and that the defendant had not been notified to produce it, and did not then have it in court. That objection was overruled, and error has been assigned to the ruling. It does not appear from the bill of exception that the defendant had not been notified to produce the original, or that it did not have the check then in court, as urged in the objection, and this of itself would be a sufficient ground for overruling the assignment. C., R. I. & G. Ry. Co. v. Thompson, 58 Tex. Civ. App. 134, 124 S. W. 144.

[6, 7] There was no reversible error in the refusal of a requested instruction defining the terms "burden of proof" and "preponderance of the testimony," since those were terms of common use, and it cannot be sup-

posed that the jury did not understand them. Nor can we say that there was reversible error in the refusal of the defendant's request for an instruction that the jury should find upon the issues submitted, without reference to their opinions as to the legal rights of the parties. When the jury took the statutory oath required to be administered to them, they must have understood their duty to be as stated in the requested instruction, and it cannot be presumed that they would be inclined to go contrary thereto in the absence of such instruction.

[8] By two other assignments of error appellant complains that the issues submitted by the court did not require a finding that the plaintiff did the particular work alleged in his petition, and that, in the absence of a finding upon that issue, the court was not authorized to enter a judgment upon the special contract sued on. These assignments are overruled, for the reason that it was shown beyond controversy that the particular work alleged in plaintiff's petition as extra work was in fact done by him, leaving as the only controverted issue of fact relative thereto, whether or not the defendant made the alleged parol contract to pay plaintiff therefor, which was found by the jury in plaintiff's favor.

The foregoing disposes of all of appellant's assignments of error.

[9, 10] The evidence shows that this suit was instituted on February 9, 1915, at which time the extra work, for which compensation is claimed by the plaintiff, had not been finished, and was not finished until plaintiff thereafter had done 12 additional days' work. The evidence further shows that such further work after the institution of the suit was done without any objection on the part of the defendant. On May 12, 1915, plaintiff filed his amended original petition, in which he included a demand for $600 for said 12 days' work in addition to that sued for in the original petition. After the verdict was returned, defendant, by written contest, resisted any judgment for said 12 days' work, and also for the incidental expenses incurred by English in doing said extra work, aggregating $155.85, mentioned above, and that objection was by the court sustained; the ground of such objection being that plaintiff should not be allowed to recover for said additional 12 days' work after the defendant had disputed the said alleged special contract, and that he should not be allowed to recover the incidental expenses because he had not alleged that the defendant had agreed, either expressly or impliedly, to pay the same.

By cross-assignment appellee insists that there was error in that ruling. We are of the opinion that plaintiff should have been allowed a recovery for the $600 for the 12 days' work mentioned. The basis for the contention that the defendant had repudiated the contract before the institution of the suit was testimony of Dr. Rumph, in effect that, just prior to the institution of the suit, plaintiff appeared at a meeting of the board of directors of the defendant, and requested an acknowledgment of its liability to plaintiff in accordance with the terms of the contract of employment for such extra work, which he then claimed had been made with him by Fitch Stine, as the president of the company. According to the further testimony of this witness, the board of directors at that meeting refused to acknowledge such liability, upon the ground that such alleged extra work was in fact included in the original written contract as work which plaintiff had obligated himself to perform, and compensation for which was included in the $3 per foot for the total depth of the well. It thus appears that the defendant, instead of forbidding the completion of the well as a gas well, in fact expected it to be finished as such, and, as noted already, plaintiff was permitted to proceed with the work after the institution of the suit without objection on the defendant's part. In order for plaintiff to recover on the parol contract for extra work as alleged, it was necessary, of course, for him to show that he had completed it in accordance with the terms of the contract. The defendant did not seek to abate the suit because it had been instituted prior to the completion of the alleged work, nor was there any issue tendered in the pleadings of either party with respect to plaintiff's measure of damages, if any were recoverable at all, in the event the work had not been completed in accordance with its terms. Plaintiff's cause of action was upon his entire contract; he could not have two suits based upon the same contract, and under the circumstances related we are unable to perceive any valid reason why he should not recover for the work performed by him after the institution of the suit. Weber Gas & Gasoline Engine Co. v. Bradford, 34 Tex. Civ. App. 543, 79 S. W. 46; Bryson v. McCone, 121 Cal. 153, 53 Pac. 637; 8 R. C. L. pp. 539 to 541, inclusive.

Appellee has cited no evidence to show that it was understood by and between the parties at the time the special parol contract was made for the extra work that the incidental expenses referred to above should be paid by the defendant in addition to the $50 per day it agreed to pay plaintiff, or that the defendant even knew, or had reason to believe, that it would be expected to pay therefor; and in the absence of such proof, and in view of plaintiff's pleading that such expenses were necessary to finish the well as a gas well, the same were incidental to and became a part of the work which he agreed to perform at the agreed price of $50 per day. Accordingly, appellee's assignment of error to the refusal of a recovery for such expenses is overruled.

For the reasons noted, the judgment of the trial court is reformed, so as to include said $600 for work performed after the institution of the suit in the amount of plaintiff's recovery, thus making the amount of the principal

of the judgment in favor of plaintiff against the defendant $3,542.90 with interest thereon from the date of the judgment at the rate of 6 per cent. per annum, and for costs of suit, and, as so reformed, the judgment is affirmed.

Reformed and affirmed.

## On Motion for Rehearing.

[11] If, under such authorities as noted in 9 Cyc. 638, 639, and many of which are collated in notes to Davis v. Bronson, 33 Am. St. Rep. 783, it could be said that the action of the board of directors of the Oil Company, referred to in our original opinion, considered in connection with the other attendant circumstances mentioned, was such a repudiation of the contract to pay $50 per day for the alleged extra work as to deprive plaintiff of the legal right to recover on said contract for the work done after the institution of the suit, still plaintiff showed a clear right to recover $50 per day for such work upon his alternative plea of quantum meruit, since it was shown by uncontroverted evidence that the work was reasonably worth that sum, was performed with the knowledge and consent of the company, and was accepted by it.

The motion for rehearing is overruled.