[Civ. No. 3237.  Second Appellate District, Division Two.—December 13, 1920.]

## THE L. W. BLINN LUMBER COMPANY (a Corporation), Respondent, v. PIONEER DRAINAGE DISTRICT (a Corporation), et al., Defendants; EDWARD PINE et al., Appellants.

[1] Jurisdiction—Attempt in Good Faith to Enforce Lien—Claim Less Than Three Hundred Dollars—Absence of Such Right Against Public Corporation — Equity. — Where a materialman, who has supplied lumber for use by a subcontractor in the construction of a drainage ditch for a public corporation, after taking the preliminary statutory steps, in good faith and believing that the property of such corporation is subject to a lien, attempts by action brought in the superior court to foreclose such lien, that court has jurisdiction to render personal judgment for the amount involved, notwithstanding the plaintiff is in error in believing that such right of foreclosure exists, and such relief is denied, and the amount involved is less than three hundred dollars.

[2] Id.—Filing of Stop Notice — Cumulative Remedy — Equitable Garnishment—Enforcement in Equity.—The filing of a stop notice, in accordance with the provisions of section 1184 of the Code of Civil Procedure, serves as an equitable garnishment—an equitable subrogation regulated by statute—and the right to a recovery of the money so garnisheed, being a cumulative remedy, does not depend upon the establishment of a lien; and where such a stop notice is given to a public corporation, but that notice is deliberately and intentionally ignored by the directors thereof, the superior court, sitting as a court of equity, in an action to enforce the claim, will take cognizance of the facts and retain jurisdiction to decide the action on the merits, although the amount involved is less than three hundred dollars.

[3] Mechanics' Liens—Disregard of Stop Notice by Directors—Personal Liability.—Where, after the service of a stop notice

upon a public corporation, in accordance with the provisions of section 1184 of the Code of Civil Procedure, the directors thereof, with full knowledge of the facts, deliberately and intentionally ignore such notice and refuse to withhold the money, such directors become personally liable to the person injured thereby.

[4] Id.—Construction of Ditch—Consumption of Lumber—Part of Ditch.—Under section 1183 of the Code of Civil Procedure, lumber consumed in, and which actually contributes to the construction of a ditch or canal and is entirely consumed in said construction, becomes, in legal contemplation, a permanent part of the ditch.

[5] Id.—Payment of Subcontractor in Full—Effect of Stop Notice as Against Contractor.—The fact that the lumber had been furnished to a subcontractor, with whom the original contractor had settled in full prior to the filing of the stop notice, did not render such stop notice ineffectual as against the right of said original contractor to the balance due under his contract.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Donald Barker and James M. O'Brien for Appellants.

E. S. Williams for Respondent.

THOMAS, J.—As claimed by appellants, this action is brought to establish and foreclose a lien, and for the recovery of the sum of $241.19.

The defendant drainage district, a public corporation, entered into a contract with one J. W. McAllister, Sr., for the construction of a drainage ditch, the construction work being thereafter sublet by McAllister to A. H. Hobart, one of the defendants here. Plaintiff, between the dates of September 2, 1913, and October 30, 1913, furnished lumber to Hobart to be used—and part of it was so used—in the construction of a bridge over the ditch, the same becoming a permanent part of the ditch as planned. The balance of the lumber so furnished was used for "skids" over which the dredger which was employed in digging the ditch was moved and rolled in such a manner that this portion of the lumber was wholly consumed, being "reduced to splinters in the opera-

tion." The value of the lumber so furnished and used was $235.86, which indebtedness Hobart has not liquidated.

In January and May, both of the year 1914, plaintiff served upon the defendant corporation, by delivery to its president, documents purporting to be the usual stop notices, in an attempt to comply with the provisions of section 1184 of the Code of Civil Procedure, setting forth the fact that the amount above stated was still unpaid, *and notifying the corporation to withhold sufficient money due or to become due to the original contractor, J. W. McAllister, Sr., with which to pay the same.* The notice served in May, 1914, was not only served upon the defendant corporation and McAllister, Sr., but also upon the auditor and treasurer, respectively, of the county of San Bernardino, who, it is claimed, were *ex-officio* officials of the Pioneer Drainage District, the defendant corporation. These officers, however, were not served, nor did they appear, in the action. Defendants, J. W. McAllister, Jr., Edward Pine, and James W. Pate were the directors of the defendant drainage district, and familiar with all the facts above set forth. At the times of the service of the "stop notices" above referred to, the board of directors of the defendant corporation held the sum of $1,700, an unpaid balance of the contract price under the McAllister, Sr., contract, for which sum, notwithstanding the service of said notices, a warrant was issued by such board, and, by the county officials above named, approved and paid. It is alleged in the complaint that a claim of lien was, on June 1, 1914, duly verified and recorded, and thereafter, on August 28, 1914, the present action was commenced.

A special demurrer was interposed and by the court overruled. The answer, in addition to joining issue on the foregoing alleged facts, set up, by way of further defense, the fact that the court was without jurisdiction of the subject matter, for the reason that the amount prayed for is less than $300; that the drainage district, being a public corporation, could not have its property, nor any part thereof, subjected to the lien sought to be impressed thereon; that in no event are the members of the board of trustees of the drainage district liable in their individual capacity; that there was *no money due to the subcontractor,* to whom plaintiff furnished the materials, at the time of the service

of the "stop notices" in question, hence, that the same are ineffectual; and that the attempt of plaintiff to establish such claim of lien was, and now is, made with full knowledge by plaintiff of the foregoing facts.

On the issues thus formed, the case was tried and the court found for the plaintiff and against the defendants Edward Pine, J. W. McAllister, Jr., and James W. Pate—the directorate of the defendant corporation—for the sum prayed in the complaint. The judgment, however, expressly denied relief against J. W. McAllister, Sr., and the defendant drainage district. In denying the claim of lien, the court found "that the claim of mechanics' lien as alleged in said complaint was filed and recorded and this suit in and for the foreclosure of the same was brought by said plaintiff in good faith on the part of said plaintiff, and that said mechanics' lien was not asserted by said plaintiff in bad faith or as a fictitious claim." It will be further noted that the judgment so entered was against the defendants named, not "as directors," but personally.

Four points are urged by appellants for reversal: (1) The superior court was without jurisdiction; (2) appellants are not liable in their individual capacities; (3) materials furnished by plaintiff were not shown to have been used or consumed in the improvement upon the district property; and (4) that there was no money due or to become due to the subcontractor, to whom plaintiff furnished the materials, at the time of the service of the stop notices, hence the latter were ineffectual as against intervening matured rights of the contractor.

On the first point it is contended that, the defendant corporation being public in its nature and the purposes for which it was organized being essentially public, no mechanics' lien could be established or foreclosed upon property belonging to the drainage district. Respondent, on the other hand, contends "that this ditch was subject to a mechanic's lien for the reason . . . that there are two kinds of public uses, . . . (1) those things which are acknowledged to be public because 'used by the public,' and (2) those things which are held to be public uses because they promote the public interest by developing the natural resources or wealth of the country." It is argued that the things within the second class are declared to be public

uses so that the right of condemnation may be exercised in their behalf (sec. 16, Stats. 1903, p. 295), that the ditch referred to here was of this class, and that but for this reason the ditch in question is nothing more nor less than a private enterprise—while those within the first classification are of a wholly different character. Respondent concedes that no such lien could be sustained as to any such "public property," but contends that the decision of the trial court holding that *no such lien could be sustained against this ditch,* being acquiesced in by all parties to the suit and having become final, is now the law of this case, even if erroneous. The point is adverted to by respondent "to convince this court that he was in absolute good faith in contending that the ditch is subject to such lien"; and we have no difficulty whatever in sustaining the trial judge on this phase of the case—that is, we are satisfied that plaintiff, erroneously, but in good faith, brought the action on the equity side of the court.

[1] The next question with which we are confronted is: Does the fact that plaintiff sought equitable relief in the court below, notwithstanding the amount claimed to be secured by the alleged lien attempted to be foreclosed is less than $300, and notwithstanding a denial of such relief, confer jurisdiction upon that court? In our opinion this query, as applied to the instant case, must be answered in the affirmative.

It is admitted by appellants that plaintiff sought the establishment and foreclosure of a mechanics' lien, but it is claimed that "under no possible interpretation of the law could such a lien have been established or foreclosed on property held in trust by a public corporation for public use." In *Mannix* v. *Tryon,* 152 Cal. 31, [91 Pac. 983], the court says: ". . . the true doctrine is that when the superior court acquires jurisdiction by the filing of a suit to enforce a lien of mechanics and others, *under the statute relating to such liens,* it has jurisdiction to render a personal judgment for the amount claimed, although the right to a lien is denied and the amount claimed is less than $300." If we substitute for the words which we have italicized above, or add thereto, the words "or under section 1184, Code of Civil Procedure, relating to stop notices," we think that language applicable here. As we have seen, practically

all of appellants' argument on this point urges upon us their conclusion, i. e., that no lien could be had "under the law" in this case, and that there was no issue presented as to respondent's good faith in filing said "lien" and in afterward seeking to establish and foreclose the same. In our opinion it is not a question of good or bad faith, but, rather, whether the evidence here presents facts which, under the law, confer jurisdiction upon the court. We think it does.

Conceding, without so holding, that the findings of good faith are entirely outside the issues as made by the pleadings, still, no prejudice being shown, a reversal of the judgment does not necessarily follow. (*Collins* v. *Gray*, 154 Cal. 131, [97 Pac. 142].) With the exception of *Miller* v. *Carlisle*, 127 Cal. 327 (since overruled by the supreme court in several cases), we consider no case cited by appellants in point on the question now under consideration. In *Becker* v. *Superior Court*, 151 Cal. 313, [90 Pac. 689], the court says: "We have no doubt that an action at law in which the actual demand amounts to less than $300 cannot be brought and retained within the jurisdiction of the superior court by adding a fictitious claim for a larger sum, or by making a fictitious showing as a basis for a purported prayer for equitable relief. But no such question is presented here. There is nothing to indicate that the Glenwood Lumber Company was not seeking, in good faith, to foreclose a lien claimed by it. It follows that the lower court must be held to have acted within its jurisdiction in rendering the judgment complained of." If we substitute the name of the plaintiff in the instant case for that of the lumber company in the Becker case, the language just quoted is applicable here.

[2] Appellants' argument on the question of the lower court's jurisdiction is directed toward the "lien" sought to be established and foreclosed, but apparently ignores the "stop notices" under section 1184, *supra*. Regardless of the amount involved or claim that no lien could be had here, we think the stop notices, as already set forth, together with the evidence showing that all the directors had knowledge thereof and that they were deliberately and intentionally ignored, present the existence of facts of which a court of equity will take cognizance and retain jurisdiction to decide on the merits. This we think should follow here,

50 Cal. App.—24

even though the stop notices were served and the court had found that the "lien" was not filed in good faith. The stop notices served as an "equitable garnishment"— a form of "equitable subrogation regulated by statute"; hence, we think, it follows that the right to a recovery of the money so garnisheed, being a "cumulative remedy," does not depend upon the establishment of a lien. (*Diamond Match Co.* v. *Silberstein,* 165 Cal. 282, [131 Pac. 874]; *Weldon* v. *Superior Court,* 138 Cal. 427, [71 Pac. 502].)

It also is contended that there is no "fund" here, because of which the equity arm of the court could be invoked. With this contention we are unable to agree. Without an extended discussion of the matter, our opinion is that the $1,700 held by the county treasurer subject to the order of the board of trustees of the drainage district, under all the facts disclosed by the record here, constitutes such fund. It was out of this fund that the payment of the $235.86, found by the court to be due plaintiff, was sought. As already seen, facts were shown which developed that the court had jurisdiction of the money which, because of the service of the stop notices, should have been held and not by the said directors paid to another. In such case and on such showing we do not hesitate to say that equity had jurisdiction to enforce the remedy here sought, from which it follows that the action of the trial court was entirely proper.

[3] The next point urged is that appellants are not individually liable. It is contended that the statute— section 1184, *supra*—fastens the liability for its violation upon "the owner or person who contracted with the contractor"; i. e., that in this case it requires the "owner" to withhold the money; that the "owner" in the instant case is the drainage district; that "if there is any liability at all for failure to withhold this fund that liability is upon the district"; and that there is no privity between these appealing defendants and the plaintiff, the former being simply agents of the district, hence no right to grant plaintiff relief against them exists, but that such right, if any exists, must be against the district. The argument is false. Though the drainage district is the "owner," it could only act through its board of directors, and the directors, when they willfully disregarded their clear duty under the law

and refused to withhold the money as they lawfully should have done, became personally liable to the person injured thereby. (*Amy* v. *Barkholder*, 11 Wall. 136, [20 L. Ed. 101, see, also, Rose's U. S. Notes]; *Mock* v. *City of Santa Rosa*, 126 Cal. 330, 344, [58 Pac. 826]; *Payne* v. *Baehr*, 153 Cal. 441, [95 Pac. 895].

It is admitted that the execution and delivery of the warrant drawn on the county treasurer for the balance owing to the contractor was authorized by these appealing defendants acting as a board of directors and not as individuals, and that all this was done after the service of the stop notices, as hereinbefore set forth; but in an attempted justification of their action, appellants say this was done "because the board knew the subcontractor had been fully paid by the contractor *for all the work which he had done.*" From this they argue that "the injustice of making the contractor *pay for materials* the second time appealed to them very strongly." This was a matter which was not for their consideration. When the notices were served upon the drainage district, there was but one thing for them as directors to do, i. e., to "withhold from the contractor sufficient money due or that may become due to such contractor to answer such claim." (Sec. 1184, *supra*.) This one thing they did not do; but, on the contrary, and with actual knowledge that the notices had been served, they deliberately and intentionally disregarded the same. This conclusion is amply supported by the evidence, for one of the directors of the drainage district, McAllister, Jr., testified as follows: "We [the directors] knew that notices had been served by plaintiff as already stated. . . . We intended to disregard the notices that had been served for we knew that A. H. Hobart had been paid in full for all the work he had done." The argument of appellants is hypertechnical. The testimony does not pretend to show that Hobart had been paid anything for *materials* which had been furnished to him. There was no discretion vested in these appealing defendants, either individually or as a board. At the meeting on June 29, 1914, when acting as such board with knowledge of the notices, appellants ordered and drew up a warrant for $1,700 in favor of the original contractor, delivering the same to him, they acted at their peril. Having done so they cannot now, we think, be heard to complain. Whether

they acted in good faith in such action is immaterial, for the result is the same as would have followed a like action in bad faith, namely, the deliberate destruction of plaintiff's right to the remedy sought. One cannot act to the detriment of another, and in open defiance of that other's rights, and escape liability for his action. In our opinion there is no question of the liability of appellants individually, as was found by the learned trial judge.

In the face of the record before us, we fail to discover any merit in the third point urged. The court found that all the lumber furnished by plaintiff to Hobart, the subcontractor (excepting a certain part of the value of $5.33), was actually used in the digging or dredging of the ditch or canal; that the portion not wholly destroyed became a permanent part thereof; and that the value of the lumber so used was $235.86. The evidence supports this finding. It is contended by appellants that the portion of the lumber so furnished which was used as "skids," and which was destroyed by the action of the dredger, was not incorporated in the structure of the ditch, and hence remained the property of the contractor and not the district. With this contention we cannot agree. The statute provides that "materialmen . . . furnishing materials to be used *or consumed* in . . . the construction . . . of any ditch . . . shall have a lien," etc. (Italics ours.) **[4]** In our opinion this section (1183, Code Civ. Proc.) contemplated just such a condition as is here presented. A most cursory perusal of the history of this section will, we think, disclose the fact that appellants' argument is based upon the premise that the law is as set forth in the cases cited by them to support their contention; while the fact is that none of the cases so cited was decided since the amendment of the section in 1911—an amendment which reversed the policy theretofore followed by the courts of this state, to the end that our policy thenceforth might conform to "that of Nevada and other Pacific Coast states." Under the section as it now reads, there is no doubt that the lumber *consumed in,* and which, as found by the court, *"actually contributed to the construction of said ditch or canal"* and was *"entirely consumed in said construction,"* became, in legal contemplation, a permanent part of the ditch. (*Olson-Mahoney L. Co. v. Dunne Inv. Co.,* 30 Cal. App. 332, [159

Pac. 178]; *Consolidated Lbr. Co.* v. *Bosworth, Inc.,* 40 Cal. App. 80, [180 Pac. 60].)

[5] On the fourth point urged, i. e., that "there was no money due or to become due to the subcontractor, to whom the plaintiff furnished the materials, at the time of the service of the stop notices, and therefore those notices were ineffectual as against the intervening matured rights of the contractor," we are also unable to agree with appellants. So far as the latter are concerned, it is wholly immaterial whether the original contractor had settled in full with Hobart or not. (*Los Angeles etc. Brick Co.* v. *Los Angeles etc. Dev. Co.,* 7 Cal. App. 460, [94 Pac. 775]; *In re Snell,* 16 Cal. App. 253, [116 Pac. 699]; *United Materials Co.* v. *Loughery,* 22 Cal. App. 1, [133 Pac. 18].) To concede appellants' contention upon this point would be, in our opinion, to open the floodgates of fraud, deceit, and double-dealing, and to make legally possible a conspiracy between original contractors and the members of boards of directors, where the facts are as we find them here. This cannot be permitted. Appellants cite the case of *Miles* v. *Ryan,* 172 Cal. 205, [157 Pac. 5], as supporting their contention here. In that case prior rights had intervened before the service of the stop notice; in the instant case there are no intervening rights. Under the cases last cited we think the point now under consideration devoid of merit.

Judgment affirmed.

Finlayson, P. J., and Weller, J., concurred.