[Civ. No. 6296.    Fourth Dist.    Nov. 17, 1960.]

FRANK A. CALHOUN, Plaintiff and Appellant, v. HUNT-
INGTON PARK FIRST SAVINGS AND LOAN ASSO-
CIATION (a Corporation), Defendant and Appellant.

Edgar C. Keller for Plaintiff and Appellant.

Penney & Penney and John C. Penney for Defendant and Appellant.

COUGHLIN, J.—The plaintiff, Frank A. Calhoun, herein referred to as "Calhoun," sued the defendant, Huntington Park First Savings & Loan Association, a corporation, herein referred to as the "Association," to recover the amount of his claim for material furnished and services rendered in connection with certain construction work, alleging that the Association was the holder of construction loan funds deposited with it for the payment of such work; that he filed a stop notice with it, as provided by law; and that, disregarding this notice, the Association thereafter transferred all of such funds to an escrow holder payable to trustees for the benefit of creditors, without withholding therefrom sufficient money to satisfy his claim. The defendant answered and cross-complained bringing into the action the escrow holder, Security Title Insurance Company and the trustees, Glen Behymer and Ralph Hoffman. Judgment on the complaint was rendered in favor of Calhoun and against the Association for the amount in question, without interest; and on the cross-complaint directing the trustees to make an accounting and decreeing payment to the Association of a prorata share of the funds remaining in escrow. The Association appeals from that part of the judgment awarding Calhoun recovery on his complaint. Calhoun appeals from that part of the judgment denying him interest. No appeal is taken from that part of the judgment directed to the issues raised by the cross-complaint.

In the early part of 1955 the Association loaned Holly Manors, Inc., $410,960 to be used in the construction of residential units upon two tracts of land; received trust deeds upon this property securing payment of this loan; entered into a construction loan agreement with the borrower whereby the funds loaned were assigned to it to be disbursed in payment of labor and materials furnished in the course of such construction. The loan agreement contained provisions respecting the manner of such payment; declared that a work stoppage in the construction for an aggregate of 15 days would constitute a default under its terms; and provided that, in the event of any default thereunder the "Association shall withdraw any sum or sums on deposit with it under the terms of this

agreement and credit the same upon any indebtedness of the''
borrower. In due course the borrower undertook to build
the units in question. In connection therewith, Calhoun, as a
subcontractor, pursuant to an agreement in writing, furnished
labor and material for dry-wall construction for which he
received progress payments until November 14, 1955, when the
borrower stopped work. At this time there remained in the
construction loan account the sum of $49,953.15, being the
balance of the amount loaned after previous disbursements,
pursuant to the provisions of the loan agreement, for material
and labor furnished.

On January 26, 1956, Calhoun filed a stop notice and a bond
with the Association, in accord with the provisions of section
1190.1, subdivision (h) of the Code of Civil Procedure, which
provides that a mechanic or materialman who has furnished
labor or material to a construction project, the cost of which
is payable from the proceeds of a building loan placed in a
fund for that purpose by the borrower, may give notice of his
claim to the person holding such proceeds who, upon the post-
ing of a bond by the claimant as therein provided, ''must
withhold from the borrower or other person to whom said
owner may be obligated to make payments or advancements
out of said fund sufficient money to answer such claim, and
any lien that may be filed therefor.'' (Code Civ. Proc.,
§ 1190.1, subd. (h).)

After receiving this stop notice the Association did not dis-
burse any part of the remaining funds to the borrower. How-
ever, without retaining the amount of plaintiff's claim, the
Association deposited all of the remaining funds in an escrow
with instructions to pay the same to the cross-defendants
Behymer and Hoffman as trustees for the benefit of creditors
of the borrower subject to certain conditions precedent here-
inafter noted. The escrow instructions were executed only by
the Association.

The deposit in escrow was made on March 29, 1956. The
instructions were dated March 28, 1956, and followed a pro-
posal made by the Association at a meeting of creditors, over
which the plaintiff presided as chairman, which had been
held earlier on the same day. Before this time the Association
had started foreclosure proceedings under its deeds of trust;
several claimants, including the plaintiff, had filed mechanics'
liens against the property; the United States Government
also had filed a lien for unpaid taxes; and the claim of a person

by the name of Everson, arising out of an alleged improper attachment return by the Association, had not been settled. The Association proposed that it would waive its right under the loan agreement to apply the remaining $49,953.15 in the construction loan fund to the obligations secured by its deeds of trust, and place this balance in an escrow with instructions to deliver the same to Behymer and Hoffman for prorata distribution to the creditors upon condition that (1) the Association was the successful bidder at the foreclosure sale under its deeds of trust and the borrower did not go into bankruptcy prior to its obtaining title thereto and (2) the tax claim of the United States Government and the claim of Everson were disposed of out of these funds. This proposal was put to the vote of the creditors present. Only favorable votes were cast. Calhoun did not vote, although he stated that he did not like the proposal and made the suggestion, which the Association refused to accept, that the funds be distributed to the lien claimants in exchange for a release of their claims. Calhoun believed that the claims of the United States Government and of Everson should not be paid out of the construction funds. Mr. Behymer told those present that it would be necessary for him to obtain a power of attorney signed by all of the creditors to consummate the transaction. The escrow instructions followed the foregoing proposal and authorized payment to Behymer and Hoffman upon condition that (1) the escrow holder issue a policy of title insurance showing title in the Association subject only to current real property taxes; (2) the borrower should not become bankrupt before the Association acquired title; and (3) the Everson attachment was released. These instructions also directed that the money deposited should be returned to the Association in the event that it was not the successful bidder at the foreclosure sale.

Calhoun had served on the creditors' committee for several months before the March 28th meeting. He continued to serve on this committee after the construction funds were placed in escrow upon assurances from Behymer that his doing so would not commit him to the arrangements proposed by the Association, nor preclude him from pursuing separate remedies so long as he did not execute the requested written power of attorney. He remained on the committee with the hope and for the purpose of persuading the Association to apply all of the money in the construction fund to the mechanic's lien claimants, which would have required it to make other arrange-

ments with respect to the lien of the United States Government and the claim of Everson. Being unable to accomplish his purpose, he resigned from the committee on or about May 22nd.

The following chronology of events is pertinent: On March 30th, two days after the creditors meeting, Calhoun's attorney wrote the Association, referred to the stop notice, and stated that Calhoun claimed to be the "rightful owner of those portions of the above loan funds which are due him as you have been heretofore notified"; on April 6th, the Association purchased the property at the foreclosure sale; on May 22nd it was served with process in the instant action, which had been filed on May 21st; and on June 14th, after determining that the mechanic lien claimants, including the plaintiff, had released their lien claims against the property, the Association amended its instructions to the escrow holder and authorized partial disbursement of the funds on hand even though the claims of the United States Government and Everson had not been satisfied, and even though, in the meantime, it had been advised that Calhoun refused to sign the power of attorney to Behymer. The attorney for the defendant Association testified that before the distribution was made he understood that Calhoun "was causing some trouble and wasn't going to go along," and before any distribution was made he wanted to be sure that Calhoun had released his mechanic's lien. Calhoun released this lien, relying upon the stop notice to assure him payment of his claim. No request was made of him that he release the stop notice. Subsequently a prorated distribution was made. Calhoun received a check for his share, as well as a check for services rendered as a member of the creditor's committee; offered to return them unless they were tendered as payment of money retained for him under his stop notice; but did not do so, although he has not cashed either check.

The pretrial conference order did not designate the issues to be tried. By stipulation at the time of such conference the indebtedness of the borrower, Holly Manors, Inc., to Calhoun for dry-wall construction in the sum of $6,525.45 was admitted. Also admitted were allegations in the complaint that this indebtedness was unpaid; that the plaintiff had filed a stop notice requesting that the Association cease further payment to Holly Manors, Inc., from the construction loan fund until his claim had been paid; and that the sum of $49,953.15 was on deposit in that fund at that time.

On appeal the Association makes four contentions, i.e., that

(1) the "stop notice caught nothing"; (2) there has been no payment to the borrower contrary to this notice; (3) Calhoun's claim should be paid from the funds placed in escrow; and (4) the court erred in not finding that Calhoun had agreed to take only his prorata share of the fund and in not finding that he was estopped by his own conduct to take more than such prorata share.

The contention that the "stop notice caught nothing" is based on the fact that Holly Manors, Inc., had defaulted under the terms of the loan agreement and, in accord with the provisions thereof, the Association was entitled to withdraw the remaining funds on deposit with it and credit the same to the obligations secured by its deeds of trust. However, the Association did not withdraw these funds, or credit them upon these obligations. Instead, after the stop notice had been given, it deposited the funds with an escrow holder with instructions to pay the same to trustees for the benefit of creditors providing certain designated conditions were met. There is no basis for the contention that the funds ever were credited to the borrower's indebtedness. To the contrary, by its pretrial conference stipulation the Association admitted that at the time the stop notice was given, it "held" funds from the proceeds of the loan agreement in the sum of $49,953.15.

The contention that the Association complied with the stop notice is based on the claim that the only obligation imposed upon it thereby was to refrain from making further payments out of the fund to the borrower; that it has made no payments to the borrower since the filing of the notice; and, therefore, has complied fully with its obligation in the premises. In this regard, the complaint alleges that the plaintiff, by his notice, requested that further payments from the construction fund to Holly Manors, Inc., "be ceased" until his claim had been paid. It should be noted, however, that section 1190.1, subdivision (h), does not require the person giving a stop notice to therein request the recipient to withhold further payment of the construction funds in its possession. If the claimant supplements his notice with an appropriate bond, the law imposes upon the party entrusted with those funds the obligation to "withhold from the borrower or other person to whom said owner may be obligated to make payments or advancements out of said fund sufficient money to answer such claim, and any lien that may be filed therefor." (Code Civ. Proc., § 1190.1, subd. (h).)

■ In substance, section 1190.1, subdivision (h), indicates that compliance with the notice and bond provisions thereof effects an "equitable garnishment." ■ The courts have identified the effect of filing a stop notice in connection with the claims of mechanics and materialmen pursuant to similar code provisions as causing "an assignment *pro tanto*," "establishing an equitable garnishment," conferring an "equitable lien," or resulting in "a form of equitable subrogation." (*Diamond Match Co.* v. *Silberstein*, 165 Cal. 282, 288 [131 P. 874]; *Hampton* v. *Christensen*, 148 Cal. 729, 740 [84 P. 200]; *Weldon* v. *Superior Court*, 138 Cal. 427, 430 [71 P. 502]; *Bates* v. *Santa Barbara County*, 90 Cal. 543, 548 [27 P. 438]; *L. W. Blinn Lumber Co.* v. *Pioneer Drainage Dist.*, 50 Cal.App. 364, 370 [195 P. 750]; *Frey* v. *Superior Court*, 22 Cal.App. 421, 422 [134 P. 733].) Recovery upon such claims by enforcement of the rights thus acquired may be obtained through an action in equity. (*Weldon* v. *Superior Court, supra,* 138 Cal. 427, 431; *L. W. Blinn Lumber Co.* v. *Pioneer Drainage Dist., supra,* 50 Cal.App. 364, 370; *Frey* v. *Superior Court, supra,* 22 Cal.App. 421, 423.) ■ The remedy thus afforded the mechanic and materialman, which involves a proceeding against the construction loan fund, is different from and in addition to the remedy provided by the statute authorizing the filing of and foreclosure upon a lien against the property improved. (*Weldon* v. *Superior Court, supra,* 138 Cal. 427, 430; *Bianchi* v. *Hughes*, 124 Cal. 24, 27 [56 P. 610]; *Grigsby* v. *Ross*, 138 Cal.App. 757, 759 [33 P.2d 450].) The remedies are cumulative. (*Bates* v. *Santa Barbara County, supra,* 90 Cal. 543, 547; *Bianchi* v. *Hughes, supra,* 124 Cal. 24, 28; *Diamond Match Co.* v. *Silberstein, supra,* 165 Cal. 282, 288.) The decisions hereinabove cited consider pertinent applicable provisions of former section 1184 of the Code of Civil Procedure which are substantially the same as those now contained in subdivision (c) of section 1190.1, covering the effect of stop notice proceedings as applied to an owner, as well as those contained in subdivision (h) of that section, governing the effect of such proceedings as applied to the holder of construction funds.

■ We conclude that the "equitable garnishment" referred to in section 1190.1, subdivision (h), may be enforced through an action in equity; that the holder of construction funds may not invalidate the effect of a notice and bond given pursuant to the statutory provisions by thereafter transferring

those funds to other creditors or using them to advance its own interests, as was done in the case at bar (*Diamond Match Co. v. Silberstein, supra,* 165 Cal. 282, 289; *Hampton* v. *Christensen, supra,* 148 Cal. 729, 739; *L. W. Blinn Lumber Co.* v. *Pioneer Drainage Dist., supra,* 50 Cal.App. 364, 370); and that, in an action to effect recovery from the funds subjected to the claimant's equitable garnishment, the person holding those funds must account for the amount thereof which the statute required him to withhold, and if he fails to do so, a personal judgment may be entered against him. (*Diamond Match Co.* v. *Silberstein, supra,* 165 Cal. 282, 288; *Butler* v. *Ng Chung,* 160 Cal. 435, 439 [117 P. 512, Ann. Cas. 1913A 940]; *Bianchi* v. *Hughes, supra,* 124 Cal. 24, 28; *Southern California Elec. Co.* v. *McDonald,* 178 Cal. 386, 390 [173 P. 760].) Calhoun was not required to proceed against the funds placed in escrow.

The contentions that the court erred in not finding that Calhoun agreed to take only his prorata share of the remaining construction funds, and in not finding that he was estopped to take more than such a prorata share, in substance, are contentions that the evidence establishes such findings as a matter of law. ■ A finding of fact is not established as a matter of law unless the record supports no other reasonable conclusion. (*Hudson* v. *Rainville,* 46 Cal.2d 474, 477 [297 P.2d 434]; *Martinez* v. *Southern Pacific Co.,* 45 Cal.2d 244, 248 [288 P.2d 868]; *Bowman* v. *Collins,* 181 Cal.App.2d 807, 810 [5 Cal.Rptr. 776].) ■ If the evidence offered in support of such a finding is of that character which the trial court is entitled to reject, or if there is substantial evidence to support a contrary finding actually made, a claim of error in failing to make the finding contended for is not sustained by the record.

The trial court found that Calhoun did not agree, either expressly or impliedly, that he would release his stop notice claim or that he would execute a power of attorney to Behymer and Hoffman as proposed. Calhoun's silence when the Association's proposal was voted upon at the March 28th creditors' meeting did not require a finding, as a matter of law, that he assented thereto. ■ "The question of acceptance by silence or acquiescence is a question of fact." (*McAulay* v. *Jones,* 110 Cal.App.2d 302, 309 [242 P.2d 650]; *Beatty Safway Scaffold* v. *Skrable,* 180 Cal.App.2d 650, 655 [4 Cal. Rptr. 543].)

The court also found the nonexistence of estoppel. Significant is a finding that there was no conduct of Calhoun upon which the Association reasonably relied in distributing all of the construction funds on hand without regard to the withholding obligation imposed by the stop notice. At the time when process in this action was served on the Association, and it knew that Calhoun was seeking recovery on his stop notice claim, no money had been disbursed from the funds placed in escrow; the conditions of the escrow had not been met; and the time for closing had expired. The Association, if it so desired, then could have terminated the escrow and withdrawn the money theretofore deposited. It did not choose to do so. Instead, at a subsequent date, when the conditions of the escrow still were not met, because the claims of the United States Government and of Everson had not been satisfied, the Association amended its instructions to permit a prorata disbursement of funds on hand. This evidence, and the inferences reasonably deducible therefrom, support the conclusion implicit in the finding of the trial court that the Association was not entitled to rely on the alleged conduct of Calhoun as constituting a representation of his future course respecting the enforcement of his equitable garnishment and that, in entering into and proceeding with the escrow, it did not act upon the belief that Calhoun intended to release his stop notice rights. It is essential to an equitable estoppel that the conduct of the party sought to be estopped was of such a nature as to induce a reasonable person to rely upon it, and that the party asserting the estoppel in reliance thereon omitted some act or changed his position to his injury. (*Lusitanian-American Development Co.* v. *Seaboard Dairy Credit Corp.*, 1 Cal.2d 121, 128 [34 P.2d 139] ; *City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 105, 149 [287 P. 475] ; *Mercantile Trust Co.* v. *Sunset etc. Co.*, 176 Cal. 461, 472 [168 P. 1037] ; *Filipini* v. *Trobock*, 134 Cal. 441, 444 [66 P. 587].) Ordinarily the existence of an estoppel is a question of fact. (*Pike* v. *Rhinehart*, 112 Cal.App.2d 530, 533 [246 P.2d 963].) The evidence before us sustains the finding of nonreliance. Moreover, evidence with respect to Calhoun's silence at the creditors' meeting and to other factors relied upon by the Association as proof of conduct creating an estoppel, created only a conflict with evidence supporting the conclusion that no estoppel existed. Under these circumstances, the find-

ing of the trial court thereon must be sustained. (*Primm* v. *Primm*, 46 Cal.2d 690, 693 [299 P.2d 231].)

The appeal by Calhoun is from that part of the judgment denying interest on the unpaid balance due him under his contract. He claims interest on this amount from January 26, 1956, the day when the stop notice was served, relying upon the provisions of section 3287 of the Civil Code that:

"Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . ."

In opposition, the Association relies upon the provisions of section 3288 of the Civil Code that an award of interest is discretionary in "an action for the breach of an obligation not arising from contract," and contends that these provisions are controlling in the case at bar.

Calhoun's claim against Holly Manors, Inc., was based on a written contract, under which he agreed to furnish labor and material for dry-wall construction and Holly Manors, Inc., agreed to pay him $33,607 therefor. At the time Calhoun filed his stop notice he had completed his part of the contract; had been paid $27,080.55 on account; and the sum of $6,525.45, the amount specified in the stop notice, remained unpaid.

Where the amount payable under a contract is fixed thereby, interest thereon is recoverable in an action against the promissor from the date the obligation becomes due. (*Richter* v. *Walker*, 36 Cal.2d 634, 646 [226 P.2d 593]; *Walpole* v. *Prefab Mfg. Co.*, 103 Cal.App.2d 472, 484 [230 P.2d 36]; *Glens Falls Indem. Co.* v. *Perscallo*, 96 Cal.App.2d 799, 803 [216 P.2d 567].) The "equitable garnishment" effected through stop notice proceedings, like a mechanic's lien, "is as extensive as the claim which it is intended to protect." (*Pacific Mutual Life Ins. Co.* v. *Fisher*, 106 Cal. 224, 233, 234 [39 P. 758].) In the case at bar, this claim included Calhoun's demand for the amount due him under his contract and also an award of interest in the event he brought an action to enforce such demand. Interest prior to judgment has been awarded in actions to foreclose mechanics' liens (*Meda* v. *Lawton*, 217 Cal. 282, 285, 286 [18 P.2d 655]; *Sweet* v. *Fresno Hotel Co.*, 174 Cal. 789, 798 [164 P. 788, Ann. Cas. 1918D 346]; *Macomber* v. *Bigelow*, 126 Cal. 9, 15 [58 P. 312]; *Pacific Mutual Life Ins. Co.* v. *Fisher, supra,* 106 Cal. 224,

233), and also in actions to effect recovery under stop notice proceedings which have resulted in a personal judgment against the owner. (*Diamond Match Co.* v. *Silberstein, supra,* 165 Cal. 282, 289.) By the same standard, interest is recoverable under the circumstances at bar. Appellant Calhoun asked for interest from the date the stop notices were filed, which was after payment was due him, and his right to interest will be limited accordingly.

The judgment is modified to provide for interest in accordance with this opinion and as so modified, paragraph I thereof shall read as follows:

''That plaintiff have and recover from defendant Huntington Park First Savings & Loan Association the sum of $6525.45 together with interest thereon at the rate of 7% per annum from January 26, 1956 to date hereof.''

As so modified, the judgment is affirmed. Respondent and cross-appellant Calhoun will recover costs on appeal.

Griffin, P. J., and Shepard, J., concurred.