BRAY, P. J.
 

 Defendant school district appeals from a judgment in favor of plaintiff for $7,988.40 and interest from December 10, 1957.
 

 Questions Presented
 

 1. (a) Is the contractor’s surety subrogated to the rights to foreclose a stop notice lien of laborers and materialmen whose claims the surety has paid? Yes.
 

 (b) Is filing of a claim with the school district a prerequisite to this type of action? No.
 

 2. (a) How may a stop notice be filed?
 

 (b) Were stop notices filed? Yes.
 

 
 *229
 
 3. Did the district make a premature payment? Yes.
 

 4. Did the surety, by the terms of its bond, waive its rights arising from a premature payment by the district to the contractor? No.
 

 5. Correctness of findings.
 

 Record
 

 Defendant school district contracted with Charles J. Collins-worth, a contractor, for the construction of certain additions to the district’s school building. Prior to July 1, 1957, three progress payments totalling $48,339.36 had been earned and paid on a total contract price, with agreed extras, of $63,520. September 5, 1957, a fourth payment of $7,988.40 was paid Collinsworth, leaving an unpaid balance of $7,192.24, which sum was paid over to plaintiff. This sum was insufficient to pay the remaining claims of laborers and materialmen, including those who had filed stop notices. Plaintiff by reason of its bond paid all claims. Then, contending that it was subrogated to the rights of the stop notice claimants, it brought this action against the district for the amount represented by the stop notice claims.
 

 1. (a)
 
 Subrogation.
 

 Defendant contends that there can be no subrogation in favor of a surety who has paid the claims of stop notice claimants and therefore the trial court erred in overruling its demurrer to the complaint, its motion for nonsuit, its objections and counter findings of fact and conclusions of law, and in rendering judgment for plaintiff. Our determination of this and the other questions raised by defendant is that the court committed no error. Defendant claims that the only remedy open to plaintiff, if any, for the defendant’s failure to withhold under the stop notice would be an action against the trustees of the district for negligence. That such a remedy might be available is shown by
 
 Mock
 
 v.
 
 City of Santa Rosa
 
 (1899) 126 Cal. 330 [58 P. 826],
 
 Payne
 
 v.
 
 Baehr
 
 (1908) 153 Cal. 441 [95 P. 895], and
 
 L.
 
 W.
 
 Blinn Lumber Co.
 
 v.
 
 Pioneer Drain. Dist.
 
 (1920) 50 Cal.App. 364 [195 P. 750], However, such remedy is not exclusive.
 

 Defendant concedes that if a proper and timely stop notice is filed there then arises what is referred to as an equitable garnishment which confers certain rights on the labor and material claimants filing the notices.
 

 
 *230
 
 “In substance, section 1190.1, subdivision (h) [Code Civ. Proc.], indicates that compliance with the notice and bond provisions thereof effects an ‘ equitable garnishment. ’ The courts have identified the effect of filing a stop notice in connection with the claims of mechanics and materialmen pursuant to similar code provisions as causing ‘an assignment
 
 pro tanto,’
 
 ‘establishing an equitable garnishment,’ conferring an ‘equitable lien,’ or resulting in ‘a form of equitable subrogation. ’ [Citations.] Recovery upon such claims by enforcement of the rights thus acquired may be obtained through an action in equity. [Citations.] The remedy thus afforded the mechanic and materialman, which involves a proceeding against the construction loan fund, is different from and in addition to the remedy provided by the statute authorizing the filing of and foreclosure upon a lien against the property improved. [Citations.] The remedies are cumulative. [Citations.] The decisions hereinabove cited consider pertinent applicable provisions of former section 1184 of the Code of Civil Procedure which are substantially the same as those now contained in subdivision (e) of section 1190.1, covering the effect of stop notice proceedings as applied to an owner, as well as those contained in subdivision (h) of that section, governing the effect of such proceedings as applied to the holder of construction funds.
 

 “We conclude that the ‘equitable garnishment’ referred to in section 1190.1, subdivision (h), may be enforced through an action in equity; that the holder of construction funds may not invalidate the effect of a notice and bond given pursuant to the statutory provisions by thereafter transferring those funds to other creditors or using them to advance its own interests, as was done in the case at bar [citations] ; and that, in an action to effect recovery from the funds subjected to the claimant’s equitable garnishment, the person holding those funds must account for the amount thereof which the statute required him to withhold, and if he fails to do so, a personal judgment may be entered against him. [Citations.]”
 
 (Calhoun
 
 v.
 
 Huntington Park First Sav. & Loan Assn.
 
 (1960) 186 Cal.App.2d 451, 459-460 [9 Cal.Rptr. 479]; see also
 
 Sweeney
 
 v.
 
 Board of Trustees
 
 (1917) 33 Cal.App. 331 [165 P. 42].)
 

 In a public works contract there can be no lien against the property; hence the use of stop notices to provide protection to subcontractors and defaulting contractors. In a sense the stop notice constitutes a lien on the prop
 
 *231
 
 erty (earnings) of the contractor held by the owner. When the notice is filed the claimant immediately has a right against those earnings held by the public agency. In effect, the filing imposes a trust obligation on the public agency.
 
 (Theisen
 
 v.
 
 County of Los Angeles
 
 (1960) 54 Cal.2d 170 [5 Cal.Rptr. 161, 352 P.2d 529];
 
 Calhoun
 
 v.
 
 Huntington Park First Sav. & Loan Assn., supra,
 
 186 Cal.App.2d 451;
 
 Bates
 
 v.
 
 Santa Barbara County
 
 (1891) 90 Cal. 543 [27 P. 438].)
 

 This is the situation here. Once the stop notices were filed properly (as will hereafter appear) and there was at the time of filing or thereafter money earned by the contractor and unpaid, an equitable assignment or garnishment
 
 pro tanto
 
 in favor of the stop claimants occurred and a cause of action thereon arose in their favor. The claimants had a right to expect that the stop notices would be observed. Whether the money was actually there or not is immaterial because in legal contemplation the district is deemed to be holding sufficient funds to pay the claimants.
 

 It is clear that an action in equity lies by laborers and materialmen against an owner who disregards their properly filed stop notices. This brings us to the question of whether, in view of the well known rule that where a surety discharges a claim against its principal, any lien that secures that claim is likewise discharged, plaintiff surety here can be subrogated to the rights of the stop claimants whose claims it paid. The answer is that it can be. That answer appears in
 
 Street
 
 v.
 
 Pacific Indemnity Co.
 
 (9th Cir. 1935) 79 F.2d 68. There the situation concerned the rights of the indemnity company that was forced to step in and complete a public works contract. The indemnity company also had to pay certain materialmen. On payment it took an assignment from the materialmen, who had previously filed stop notices. While it is true the contest was between the trustee of the bankrupt contractor and the indemnity company the language of the court is especially pertinent here as it relates to the right of the indemnity company against the fund. The contract there in question was between the County of Alameda and a contractor. Stop notices were filed by materialmen and laborers. The court said (p. 70) : “It is clear that the indemnity company, who is bound by its bond to pay these claims, was subrogated to the right of the laborers and materialmen against the fund. As a matter of precaution the indemnity company took assignments of these claims at the time they were paid, and
 
 *232
 
 thus in law as well as in equity were subrogated to the rights of the laborers and materialmen. With reference to the balance of the claims paid by the indemnity company, apparently no stop notices had been filed at the time they were paid by the indemnity company, but there is no contention that these payments were made before the period for filing such stop notices had expired. The claimants had an inchoate lien upon the fund to which the indemnity company was subrogated.
 
 Hampton
 
 v.
 
 Christensen,
 
 148 Cal. 729, 737 [84 P. 200];
 
 People
 
 v.
 
 Moxley,
 
 17 Cal.App. 466 [120 P. 43],
 

 “The right of a surety to be subrogated to the rights of the laborers and materialmen whose claims it has paid pursuant to the terms of its bond is declared in section 2848 of the Civil Code of California,
 
 as follows: ‘A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended. . . .’ See also
 
 Allen
 
 v.
 
 Freear,
 
 50 Cal.App. 645, 647 [195 P. 748];
 
 T. H. Mastin & Co.
 
 v.
 
 Pickering Lumber Co.
 
 (D.C.) 2 F.Supp. 605;
 
 In re Estate of Elizalde,
 
 182 Cal. 427, 433 [188 P. 560].” (Emphasis added.)
 

 Defendant practically concedes the existence of the cause of action for it states in its opening brief, “. . . if the appellant school district still retained funds of respondent’s principal sufficient to cover respondent’s loss and expense, respondent would be entitled to exercise as against those funds rights substantially analogous to, if not the same as, the claimants would have had, had they seen fit to foreclose their stop notices directly. ’ ’
 

 Merner Lumber Co.
 
 v.
 
 Brown
 
 (1933) 218 Cal. 136 [21 P.2d 590], holding that the surety of the contractor was not subrogated to the mechanics’ liens of the materialmen whose claims it had paid, as well as the other cases cited by defendant on the same rule, are not in point, for the reason that in none of them had there been any action of the owner paying the contractor prematurely, as was done here.
 

 The surety’s obligation, ordinarily, is to secure the owner against default by the contractor in paying for material and labor contributed to the improvement of the owner’s premises. When, however, the owner makes a premature payment to the contractor in disregard of a stop notice, the surety is relieved from protecting the owner pro tanto and is entitled to receive from the owner the amount which the owner has
 
 *233
 
 contributed to the contractor’s default, which amount the surety would not have been required to pay had the owner complied with the stop notice.
 

 In
 
 Filippi v. McMartin
 
 (1961) 188 Cal.App.2d 135 [10 Cal.Rptr. 180], the court held that where the surety entered into a contractor’s bond through the fraud of the owner, the rule set forth in the
 
 Merner
 
 case does not apply, and the surety is subrogated to the mechanics’ lien rights of the lien claimants whose claims the surety had paid. The court said in effect that any other construction of the code sections dealing with suretyship would “reward or . . . place a protective cloak around those guilty of fraud. Such a construction is not only unreasonable but would be contrary to public policy.” (P. 139.) While, of course, in our case there is no intimation of fraud, nevertheless the same principle must necessarily apply to a situation where, as here, the owner completely disregards the stop notices, even though doing so unintentionally. If the surety pays the subcontractors thereafter it is subrogated to the subcontractors’ rights. (See
 
 Street
 
 v.
 
 Pacific Indemnity Co., supra,
 
 79 F.2d 68, which so interprets section 2848, Civil Code;
 
 Castro
 
 v.
 
 Malcolm
 
 (1924) 66 Cal.App. 635 [226 P. 976].) In
 
 Maryland Casualty Co.
 
 v.
 
 Shafer
 
 (1922) 57 Cal.App. 580, 584 [208 P. 192], the court stated that a provision in a construction contract with the county “for retention by the county of sufficient funds to pay claimants who filed verified claims . . . was for the protection of the surety as much as for that of claimants.” Likewise, the provisions of section 1190.1, Code of Civil Procedure, are for the benefit of the surety as well as for laborers and material-men. That section provides that upon the stop notice provided for therein being given, it shall be the duty of the owner to withhold from the contractor sufficient money due or that may become due the contractor, to answer the claim of which notice is given, to answer “such claim and any lien that may be filed therefor, and, if the owner is a public body whose property, by reason of public policy or otherwise, is not subject to the liens in this chapter provided for, also the reasonable cost of any litigation thereunder.” To allow the public agency to pay a contractor after stop notice and then say that because of this, the funds were gone as well as the right to recover against the public agency, leaving only a hollow right of recovery against a misfeasant public official or the defaulting contractor, is to completely strip any relevant value from the
 
 *234
 
 stop notice procedure and from the right of subrogation. Defendant ’s contention would make the right of subrogation very hollow, indeed, for the surety would be in the position of having no assurance that whatever contract funds remained would be available to mitigate its liability for labor and material.
 

 We hold that plaintiff surety was subrogated to the stop notice rights of the claimants.
 

 1. (b)
 
 No Claim, Was Necessary.
 

 Plaintiff did not file any claim against the district under the provisions of former section 1007, Education Code, then in effect. That section as it existed at the time of the filing of this action, provided: “The governing board of any school district is liable as such in the name of the district for any judgment against the district
 
 on account of injury to person or property arising because of the negligence of the district, or its officers, or employees
 
 ...” (emphasis added) where a claim is filed as specified. There is no requirement for the filing of a claim on any demand against the district except where the demand is based on a tort. As pointed out herein-before, this is not a tort action. By the very nature of the action, no claim under section 1007 is necessary. Plaintiff needs to prove only that a valid stop notice was filed, that at or after that time the contractor earned money under the contract, which was yet unpaid. The claimant is essentially attempting to make sure that the money due his debtor will continue to be held by the district. It is the contractor’s money, not the district’s money which is sought. The only interest the district has is to see that a release is procured prior to making payment to the claimant. The reason behind section 1007, i.e., to permit investigation of accidents, is not appropriate here. A subcontractor does not necessarily know anything of the transactions between the district and the contractor and might not have the factual information to file a verified claim within the time period.
 

 In
 
 Grover
 
 v.
 
 San Mateo Junior College Dist.
 
 (1956) 146 Cal.App.2d 86 [303 P.2d 602], in considering former section 1007, Education Code,
 
 supra,
 
 we said (p. 91) : “It can be argued that imposing liability on the ‘district’ includes all manner of ways in which the ‘district,’ an artificial entity, can be liable, that is, by the acts of its ‘agents’ as well as by the acts of its ‘officers or employees.’ ” Defendant contends that as this section imposes liability in “all manner of ways in which
 
 *235
 
 the ‘district’ . . . can be liable” it likewise imposes claim requirements on all manner of ways in which a district can be liable. Obviously, “all manner of ways” refers only to ways of negligence, as section 1007 deals
 
 only
 
 with negligent acts of the school board, its agents, officers or employees. Defendant’s argument is a complete non sequitur.
 

 Section 1197.1, Code of Civil Procedure, deals with actions against public boards and others to enforce payment of claims on which stop notices have been filed, and gives the time within which such actions may be brought. It nowhere mentions the necessity of filing a claim against the district as a prerequisite to the filing of suit. No claim was required.
 

 2. (a)
 
 Filing of Stop Notices.
 

 The addition to the Oak Grove School was under the Public Works Bond Act. Stop notices in connection with such a project are governed by both sections 1192.1 and 1190.1, Code of Civil Procedure. Section 1192.1 contains no reference to the method of filing a stop notice. It does state (subd. (a)) that the notice shall be filed “with the public agency, body or officer by whom the contract was awarded, or with the controller, auditor, or other public disbursing officer. . . .” Section 1190.1, subdivision (b), a parallel section, provides that where “said work is being done under a contract with the State, or with any public board, commission, or officer thereof . . . such notice must be filed, within said time, in the office of the controller, auditor, or other public disbursing officer whose duty it is to make payments under the provisions of such contract, or with the commissioners, managers, trustees, officers, board of supervisors, board of trustees, common council or other body by whom the contract for the improvement was awarded.”
 

 Section 1190.1, subdivision (l), provides that “. . . notice to withhold may be served by registered mail with the same effect as by personal service.” It appears that both sections require the filing of the stop notice, and therefore that the important requirement is that the notice be filed with the proper board. While section 1190.1, subdivision (l), expressly provides that the filing may be either by mail or personal service, and section 1192.1 is silent upon the manner of filing, it would seem, nevertheless, that the method provided by section 1190.1 should reasonably apply to filing under section 1192.1. However, in any event it is not the manner in which
 
 *236
 
 the notice is presented for filing that is important; it is the actual presentation for filing that is important. In our ease whether subdivision
 
 (l)
 
 of section 1190.1 applies to notices under section 1192.1 or not, the facts show that the notices were presented at the board’s office for filing.
 

 Applicable here is the language in
 
 Valente
 
 v.
 
 Sica
 
 (1934) 1 Cal.App.2d 478, 481 [36 P.2d 1086], referring to presentation of a creditor’s claim against an estate: “ [W]e can see no distinction between personal presentation and mailing. The conduct of our business affairs is so dependent upon the use of the mails that to hold otherwise would be a step backward.”
 

 2. (b)
 
 Stop Notices Were Filed.
 

 One of the stop notices was that of Universal
 
 W
 
 indow Company. It was enclosed in an envelope addressed to the district and sent by certified mail. Mrs. Wetch, the school district stenographer and recording secretary of the board of trustees, signed a receipt for it on July 29, 1957. She turned it over to Laurence Yarbrough, board member and clerk of the board. Prior to the meeting of the board on August 1, the notice was placed in a file containing other stop notices. However, it was not called to the board’s attention. There can be no question but that this constituted a filing with the board.
 

 The minutes of the August 1 board meeting indicate the names of four stop notice claimants, one of which was that of Universal. On November 12,1957, the minutes were corrected. It appears that the new superintendent had merely told the board that there were several stop notices. In typing the board minutes the secretary had looked in the file folder and listed the stop notices which she found there, including that of Universal. These minutes were not read at the August 13 meeting of the board, at which neither she nor the superintendent were present. The notices were not presented to the board until after the fourth payment. On September 3 Collinsworth obtained a warrant for the fourth payment, although no action of the board approving the progress payment had been had. Someone in a county office, apparently the auditor’s, told the superintendent that the warrant would be held there until the stop notices were cleared. The contractor paid the three stop notice claims of which the superintendent knew, and his warrant was then paid. In the shuffle, the new superintendent, who had been on vacation since August 2, was not aware of the Universal notice. (It had been ordered placed
 
 *237
 
 in the folder by Yarbrough, who departed the scene about August 20.) The warrant was paid September 5.
 

 The other stop notice was mailed July 18, 1957, by Pacific Manufacturing Company in an envelope addressed to “George E. Neitz, 8760 Bower Street, Sebastopol, California.” The address is that of the school. However, within three days after mailing, the postman delivered it to Neitz’ home where it was received by his wife.
 

 Up to June 30 Neitz had been the district superintendent and during July and August was looking for a new position. On his return home he took the notice to the school and was let in by the school janitor. He placed the notice on the superintendent’s desk. No one was there and he did not inform the janitor of the envelope’s contents. This was before August 26, as he left the state on that date. There is no evidence indicating actual knowledge of the existence of the notice by the board or superintendent until September 16 at which time the superintendent was advised of it by plaintiff’s representative. The notice itself was not discovered until about October 8, 1957, when Haven Best, a board member, found it at his home in a folder which contained various school correspondence. Best testified that Neitz left some papers with him. The district’s secretary testified that during July and August she gathered the mail and left it unopened on the superintendent’s desk. Thus, a reasonable inference could be drawn that the stop notice reached the new superintendent’s desk, the same place it would have arrived had it been addressed directly to him.
 

 Under section 1551, Education Code, the superintendent of schools is the “chief executive officer” of the board of trustees. Section 1190.1 [Code Civ. Proc.] provides that the notice may be filed with the “trustees” or “board of trustees ... by whom the contract . . . was awarded.” Section 1192.1 provides that it may be filed with the “public agency, [or] body ... by whom the contract was awarded. ...” The school board is meant by both sections.
 

 Although limited in their application by the facts, the following cases indicate a strong tendency to find a basis to support a finding that a filing with a public body was properly made:
 
 Jones
 
 v.
 
 City of Ft. Worth
 
 (Tex.Com.App. 1924) 267 S.W. 681, which held that a charter provision requiring notice of claim of injury to be given to the “board of commissioners”
 
 *238
 
 was met by a notice to the “commissioner of streets”;
 
 Stone
 
 v.
 
 District of Columbia
 
 (D.C. 1956) 237 F.2d 28, holding that a statutory requirement that notice of claim of injury be given to the commissioners of the District of Columbia was substantially met by a notice addressed to the counsel of the commissioners;
 
 City of Grand Forks
 
 v.
 
 Allman
 
 (1907) 153 F. 532 [83 C.C.A. 554], holding that a statutory requirement that notice of claim of injury be given to the mayor and common council of the city was met by a notice given the city auditor. Section 1190.1 provides that the filing may be made with the board of trustees. Obviously, this means filing at the office of the board, which in this instance meant the office in the school building where the superintendent and his secretary were located. See
 
 Natural Soda Products Co.
 
 v.
 
 City of Los Angeles
 
 (1943) 23 Cal.2d 193 [143 P.2d 12], where the plaintiff’s claim for damages from actions of the water department of the city was received by the mailing clerk of the department. It was held that this met the requirement that the claim be presented to the board.
 

 In our case Pacific could not be required to present its notice to each member of the board. The office of the school district at the school was the obvious place to file the notice, and mailing the notice was proper. Apparently everyone was gone for the summer. Under the circumstances it was incumbent on the board to more closely regulate its affairs. The board should not now be heard to complain of the type of filing which it encouraged. The board apparently granted power to the superintendent to take care of these matters. He was the one who reported to the board about the stop notices, who dealt with the county attorney’s office and procured the signatures for Collinsworth’s progress payment.
 

 3.
 
 Premature Payment.
 

 Citing 43 American Jurisprudence, section 173, page 914, and 9 American Jurisprudence, section 107, page 69, which deal with defenses available to the surety in an action brought by the obligee, defendant contends that because the board’s disregard of the stop notices was apparently unintentional, the payment to the contractor cannot be considered a premature payment. As defendant frankly states, there are no California cases on the subject. These citations are not applicable here, as they do not deal with situations in which, as here, the board should have known of notices properly filed.
 

 
 *239
 
 4.
 
 No Waiver.
 

 Citing
 
 Bloom
 
 v.
 
 Bender
 
 (1957) 48 Cal.2d 793 [313 P.2d 568], which holds that a surety may consent in advance to the modification of its contract without notice and that if it has consented in advance, it cannot thereafter complain of such modification, defendant then states:
 
 ‘
 
 ‘ By the bond in evidence in this case the surety has consented in advance to this modification and hence cannot complain.” It is not clear what “this modification” was. Certainly a failure to regard statutory stop notices is not a “modification” of a contract, and there is nothing in the bond which can be construed to constitute a waiver of the claimants’ rights, or those of the surety as subrogee, to the full advantages of stop notices.
 

 5.
 
 Findings.
 

 In paragraph XVI of the complaint, it is alleged that by reason of defendant’s failure to withhold funds pursuant to the stop notices plaintiff was required to pay and did pay the claims of the two claimants hereinbefore mentioned, and that each claimant in writing assigned its claim to plaintiff. The court found the allegations of paragraph XVI to be true. Defendant claims that this finding is directly contrary to the statement by plaintiff that plaintiff “paid the two claims under dispute pursuant to its duty under its labor and material bond” and even then took assignments of any rights the claimants had against defendant based upon the stop notices.
 

 Apparently the contradiction claimed is that the court found that plaintiff was entitled to recover both under subrogation and assignment. Certainly under either, plaintiff was entitled to recover, so if there is any contradiction it is immaterial. Also, says defendant, plaintiff under its bond was required to pay the claimants whether there had been a stop notice or not. Plaintiff was only required to pay the claimants if they were unpaid. Had defendant done its duty they would have been paid and plaintiff would not have had to pay the claimants.
 

 Defendant further contends that the finding of an assignment is technically a conclusion of law and hence no finding at all. Therefore, says defendant, the court failed to find with respect to all the allegations of the paragraph. This argument is specious.
 

 Defendant’s attack on the court’s finding that the two claimants “served upon, and filed with” the board the
 
 *240
 
 stop notices, is based mainly upon its contention that the notices being addressed to the former superintendent did not constitute a filing with the board. As hereinbefore discussed, it did. The court found the ultimate fact. The particular method of service and filing was an evidentiary fact and did not have to be stated in the finding.
 

 Defendant complains that the court made no finding as to whether there was ‘ ‘ intentional misconduct or only negligent misconduct.” Plaintiff’s cause of action rests neither in intentional nor negligent misconduct; hence such a finding is unnecessary.
 

 The judgment is affirmed.
 

 Sullivan, J., and Conley,
 
 *
 
 concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied August 22, 1962.
 

 *
 

 Assigned by Chairman of Judicial Council.